Bradley, J.
The facts that the check on the German-American Bank for $300 was left by the drawer with the cashier of the Bank of Danville for collection merely; that it was taken and its proceeds appropriated by the defendant to his own use, and that the drawer was by his act deprived of the proceeds of it, except sixteen dollars, which he afterwards received, are not controverted.
The contention of the defendant’s counsel, is that the evidence was not sufficient to justify the conclusion that the defendant knew that the check was the property of Hartman, or that it did not belong to the bank, where the defendant obtained^ it, and therefore no intent on his part was proved to deprive or defraud the owner of his property within the meaning of the statute. Penal Code, § 528.
The crime charged depended upon criminal intent for its support, and if the evidence failed to give that quality to the act of the defendant he was improperly convicted. If *855 the appropriation at the time it was made, was not characterized by the purpose of the defendant to deprive or defraud the owner of the property in question the offense charged was not committed. It cannot rest upon his design, knowledge subsequently obtained upon his design formed after the act to reimburse the owner or to pay him the amount of the check. Wilson v. The People, 39 N. Y., 459. But the subsequent conduct of a person charged with crime may, to a greater or less extent, go to characterize his motive or intent in the performance of the act. And in this case there is some evidence tending to prove that when the attention of defendant was afterwards called to .the situation, and he was asked by Hartman to pay, he did not assert that the appropriation of the check came from any misapprehension or mistake on his part, but treated the matter and the request so made with apparent indifference. ' This, if believed by the ]ury was a circumstance properly for their consideration in connection with other facts which the evidence tended to prove.
The defendant testified that when he received the check he had no knowledge that it was the property of Hartman. And there is no evidence that he did have such knowledge or information unless it was furnished by the terms of the check itself, his relation to the bank, ana his knowledge of the method and course of its business; nor does it appear that he took any means of ascertaining the purpose for which the check was in the bank. It appears that at one time the Bank of Dansville was an incorporated institution, and the defendant its vice-president; that ten years or more before the time in question it surrendered its charter, and thereafter its business was conducted apparently in the same manner as before, and there is evidence tending to prove that it was under the control and management of the defendant; that he gave more or less personal attention to the business; and that the cashier and bookkeeper were subject to and acted under his supervision and direction; that the bank had for some time before this occasion been pressed for funds; that actions had been commenced against the defendant and his brother to foreclose mortgages, and the amount required to produce their discontinuance was between $700 and $800; that he went to the bank and behind the counter and asked for $300, and the bookkeeper either handed to, or shoved towards him this check, which lay on the coin box or till, where it was put by the cashier shortly before when left by Hartman for collection; that the bank had not the currency to supply this demand of the defendant. He took the check, sent it to Rochester by a person who was directed by him to get the money and use it to procure discontinuance of those foreclosure actions, *856 which was done. The • bookkeeper understood that the-check was left there for collection, and says he let the defendant have it because he asked for money and was one of the officers of the bank.
The defendant says that the time he got the check he presented a check for a like amount made by his brother or' by him under name of his brother, and informed them (referring to the cashier and bookkeeper) that if the Hartman check was not paid he would return it, and if paid, he would give them his brother’s check. The cashier and bookkeeper do not support the defendant in this statement, but they say that they did not see his brother’s check until three days after, when it was brought in by the defendant and by him handed to the bookkeeper, with the remark that it was the proceeds of the Hartman check. And the-latter then put the amount of it to the credit of Hartman, and charged a like amount to the account of defendant’s brother, which he says had been overdrawn. Hartman testifies that he called at the bank each of the two days following that which he left the check for collection, and was. advised that the money had not been received; that he called again the third day, and was informed that the check had been given to the defendant, whom he shortly after saw and asked for the money, and on being informed by Hartman that he could get along with sixteen dollars that day, the defendant, with Hartman, went into the bank, a check was drawn and by the latter signed for that sum, and it was paid him. This was the same day the $300 was placed to his credit in the bank. He was unable to get any more from the bank or from the defendant. When the defendant took the check from the Dansville Bank he intended to appropriate its proceeds to his own use if paid by the Rochester Bank. ,
This, in view of the actual situation, he had no right to do. He says he presumed it was a deposit, and supposed it; belonged to the bank because in its possession, that he did not suppose they would get a check otherwise than as a deposit. If the jury believed this they should have acquitted him. They evidently did not adopt such statement made by him as true. Hartman had no account at the bank, The defendant, having the relation of its managing officer, “was in the habit of coming and [ooking over the affairs of the bank.” This fact permitted the inference, that he knew something about its business.
, This check bore date the day he took it, and it was simply the check of Hartman, payable to himself or bearer endorsed by nobody. The defendant says he did not know that Hartman’s check was good and, therefore, did not then draw and leave his brother’s check, and the reason he gives *857 for his apprehension that it might not be paid is that he had known Hartman “all his life and knew that he was a poor man,” yet he made no inquiry of “anybody as to how the check came there.” He knew that Hartman’s barn had burned, but did not then know that he received any money on account of insurance upon it, which, it seems, was the fund for which he had taken credit in the German-American Bank. These facts, in view of the defendant’s interest in and responsible connection with the business of the bank and its management, were properly for the consideration of the jury upon the question of his knowledge or belief at the time he received the check, of the purpose for which it was in the bank. They might be induced to infer that inasmuch as Hartman had no account there, from the understanding of the defendant that he was a poor man, and his apprehension that the check was not good or might not be paid, that the defendant had reason to suppose and did believe or understand that the check had not been taken as a deposit, and that such inference was supported by the fact that he made no inquiry and left nothing to take its place in the bank, because if he had treated it as the fund of the bank with a counter representation by credit to some party on the books, the ordinary and usual method of the transaction of banking business in such case would have required, at the time the fund was taken, the supply of its amount in the debit account of some party so as to have credit for it to the bank appear upon the books. This check was taken and carried away, without, so far as appears, any note being made of the transaction and without direction to make any, and, as the defendant says, to be returned if not paid by the Rochester bank. This permitted the inference that the treatment of the check was as there for collection, and for that purpose it was legitimate for the defendant, as the quasi officer of the bank, to take it for collection, and present it for payment for the benefit of the owner. It is true that ordinarily the possession of negotiable paper is prima facie evidence of title in the possessor, and such would be the presumption as between a bank and its patron or customer, but the fact must be recognized that the legitimate business of banks is the collection from or through other banks of bills and notes. And as between the bank and its officers and managers the presumption does not necessarily arise that commercial paper left at and found in it is the property of the bank. The fact, therefore, of the relation referred to of the defendant to the bank and its business is quite an important one, and its absence from the case would deprive the prosecution of an. essential support.
*858 In Metropolitan Bank v. Loyd (90 N. Y., 530), cited by the defendant’s counsel the check in question was deposited with the bank and credit taken for it by and with the knowledge of the depositor. And it was necessarily held that he parted with it and the check became the property of the bank, and as between the transferee of that bank and the defendant the amount of it was for all practical purposes treated as money in the hands of the depositary bank, and the check was beyond the control of the depositor. Without the credit for it, the rule applicable would have been different. That case is cited in view of the contention that there was a presumption of title in the Dansville Bank, and therefore the check should be treated as money taken by the defendant from the bank. If the premises are not supported the conclusion does not follow. The criminal intent must be established by the evidence, but if the evidence justified the conclusion that the defendant knew that the check was not the property of the bank, and that his purpose was to take it and appropriate the proceeds to his own use, the jury were permitted to conclude that he intended the consequence of the act, and that it was to deprive the true owner of the property, which is the requisite criminal intent of a person having, in respect to the property taken, the fiduciary relation of bailee, servant, agent, clerk or trustee. Penal Code, § 528. But it is contended that no such relation existed between the defendant and the owner of the check because it was left with the person who was cashier in his individual capacity. The taking the check for collection was within the line of the business of the cashier, as such, of the bank, and by virtue of such relation, and it cannot as matter of law be said that the check was not through the cashier received by the bank for collection, and that the duty and relation of the defendant in respect to it was not of such fiduciary character.
We think the evidence required the trial court to submit the cause to the jury upon the merits; and that the evidence permitted the conclusion that the charge in the indictment was supported by it. The questions of fact seem to have been fairly submitted by the charge. And the remaining questions arise upon the exceptions taken to the refusal of the court to charge as requested at the close of the charge. The court was requested and declined to charge “that the people have the affirmative of this issue and must prove beyond a reasonable doubt that the defendant' knew that the check belonged to Hartman and not to the bank.” and the defendant’s counsel excepted. The court had substantially charged this proposition so that it could not be misunderstood by the jury, except, perhaps, that portion relating to the knowledge of the defendant that the check *859 belonged to Hartman, and in that respect charged the jury that there is no evidence that he had any actual knowledge ot the arrangement between the cashier and Hartman, and asks the question whether the defendant knew what it was; that “you are to consider whether the people have established beyond a reasonable doubt that the defendant intended to deprive Hartman of his check or defraud him of it, and that the other elements of the crime of larceny are made out. If you find that he had not any intent to defraud Hartman or to deprive him of his property your verdict must be not guilty.” The charge as made seems to have embraced all that was essential in the respect in question, whether the check and its proceeds were appropriated by the defendant with the intent to deprive or defraud Hartman of the property, and included so far as it was requisite to do so, the subject of knowledge that the check belonged to the latter. The People v. McCallam, 103 N. Y., 387; 4 N. Y State Rep., 291. But was it essential to the offence that the defendant should have had actual knowledge that the check did belong to Hartman? An element to constitute the crime was knowledge that it was not the property of the bank, and an intent to deprive or defraud the true owner of it. And we think such intent may be applicable to the consequence to the owner, and the crime accomplished although the name of the owner is not at the time actually known to the party charged with the offence. That seems to bring the crime charged within the meaning of the statute which otherwise might easily be evaded.
The court was also requested and declined to charge that “the people must prove the intent to deprive the true owner of his property or the use and benefit thereof, and that the knowledge that it was the property of such owner is necessarily involved in such intent to constitute a crime.” The defendant excepted. The proposition was covered by the charge as made by the court. And the suggestions made in reference to the exception before mentioned to the refusal to charge are alike applicable to this proposition.
We have examined the other exceptions taken to refusal to direct a verdict for the defendant and refusals to charge, and think none of them were well taken.
The judgment should be affirmed.
Haight and Corbett, J. J., concur.