IMPORTERS' & TRADERS' NAT. BANK *v.* PETERS *et al.*

(*Supreme Court, Special Term.*   May 14, 1888.)

1. BANKS AND BANKING—COLLECTIONS—AGREEMENT NOT TO DRAW ON, UNTIL NOTICE OF PAYMENT—FAILURE OF BANK—RIGHTS OF DEPOSITOR.
   A depositor, on opening his account, agreed with the bank not to draw on out of town paper deposited by him until the bank should hear of its collection.   The

bank received and sent the depositor's out of town draft to its agent, but failed before receiving notice of its collection, although it had been paid to the agent. The agent, on the bank's order, without knowing of the depositor's rights, in good faith paid part of the proceeds of the draft to third parties. *Held* that, since the bank never acquired title to the draft or its proceeds as against the depositor, the depositor could recover of the agent the proceeds of the draft remaining in his hands.

2. SAME — FRAUDULENT RECEIPT OF PAPER FOR COLLECTION BY INSOLVENT BANK — RIGHTS OF DEPOSITOR.

In such case the bank fraudulently received and forwarded for collection the depositor's out of town draft, but failed before receiving notice that it had been paid. The depositor, without knowledge of the fraud, proved his claim against the bank, and received a dividend thereon; but on discovering the fraud he repudiated the proof of claim so far as it included the draft. *Held,* that the depositor did not thereby lose the right to the draft or its proceeds in the hands of the bank's agent.

Trial by the court.

*George W. Wingate* and *Joseph Larocque,* for defendants.

INGRAHAM, J. I think the evidence in this case establishes that the agreement under which the firm of Everett Bros., Gibson & Co. opened their account with the National Exchange Bank was that they would not draw upon out of town paper until sufficient time had elapsed for its collection, or for the bank to hear of its collection or protest, and that having been the condition upon which the account was opened, and upon which the business between the depositor and the bank was conducted, it became binding upon the parties. It is clear that out of town paper deposited with the bank under this agreement did not, on the deposit, become the property of the bank, and that the bank could not, without the consent of the depositor, treat the paper in such a manner as to acquire the title to it as against the depositor. Under that agreement the bank did not become the owner of the paper, and the depositor could not have maintained an action against the bank for its amount until it had been paid, or until sufficient time had elapsed in which notice of its payment could have been received. The bank did not, therefore, become the debtor of Everett Bros., Gibson & Co. on the deposit of the draft in question, and no title to the draft was acquired by the bank. If the bank had failed on the afternoon of March 30th, it is clear that the depositor would have been entitled to its possession as against the receiver of the bank. The case differs, therefore, from *Bank* v. *Lloyd,* 90 N. Y. 535, for in that case the paper was delivered to the bank without qualification, and the bank gave the depositor credit for the amount, and he accepted it, and by the transaction the property in the check passed from Murray and vested in the bank. The court there say: "He (Murray) was entitled to draw the money so credited to him, for as to it the relation of debtor and creditor was formed, and the right of Murray to demand payment at once was the very nature and essence of the transaction." It will be noticed also that the draft in question was not the draft of a third party, the title to which would pass by transfer or indorsement. It was a draft presented by the depositor on its New York correspondent. In the hands of the bank, until some consideration had passed, it had no validity. If it had not been paid by the drawee, under the circumstances, Everett Bros., Gibson & Co. would not have been liable to the bank as drawer. The draft was sent to New York to the plaintiff, and on the 31st of March the draft was presented to the drawee, and a check given for it, which check was paid on April 1st, and on that day the Exchange National Bank was credited with the amount received, and notice sent to them. Up to that time the Exchange National Bank had no title to the money. It had been collected for Everett Bros., Gibson & Co., and under the arrangement no credit was to be given. On the second day of April, 1885, at half past 10 in the morning, the Exchange National Bank suspended, having been largely insolvent, through the misappropriation of its funds by its officers, and before notice of the payment of the draft was received. As between Everett Bros., Gibson & Co. and

the National Exchange Bank I do not think that the bank ever acquired any title to this money.

As before stated, the National Exchange Bank, as agent of Everett Bros., Gibson & Co., sent the draft to its agent for collection. The agent received the money, but before it was turned over to the national bank that bank failed, and the rights of the parties were not changed by the fact that the plaintiff held the proceeds of the draft instead of the draft itself. The plaintiff, however, having in good faith, and without the knowledge of Everett Bros., Gibson & Co.'s rights, paid to third parties on the bank's order a portion of the proceeds, would be protected to the extent of the amount that they had so paid, but the balance remaining in their hands was the property of Everett Bros., Gibson & Co., and not the property of the National Exchange Bank. Nor would the fact that the plaintiff had received other drafts from the National Exchange Bank, and paid out of the proceeds, affect the result. There is no evidence that such drafts belonged to others, or to the persons who had deposited them, or that they were not the property of the National Exchange Bank; and the mere fact that they were deposited by customers of the bank would not, of itself, show that the bank did not have title to the drafts. If any portion of this money belonged to others, the receiver was bound to show it. In *Baker* v. *Bank*, 100 N. Y. 33, 2 N. E. Rep. 452, it was held that the relations between a commission agent for the sale of the goods and his principal is fiduciary; that the title of the goods sold is specifically the property of the principal, and he may follow it and claim it so long as the identity of the money is not lost, subject to the rights of *bona fide* purchasers for value; that, on the failure of the agent, neither the goods nor the proceeds would pass to his assignee in bankruptcy for general administration, but would be subject to the paramount claims of the principal; and I can see no reason why the same rule does not apply in this case. See *Knatchbull* v. *Hallett*, 13 Ch. Div. 696.

The only remaining question is whether Everett Bros., Gibson & Co. have lost the right to follow the proceeds of this draft by proving a claim against the bank and receiving a dividend upon it. It appears that the bank had been a long time insolvent through the misappropriation of its funds by its president and cashier; that it had been notified by the comptroller of the currency about the 15th of March that they must repay the amount taken; and that after that the bank went on doing business. No attempt was made to comply with the direction of the comptroller. The acceptance of this draft under those circumstances was a fraud upon Everett Bros. & Gibson. *Cragie* v. *Hadley*, 99 N. Y. 135, 1 N. E. Rep. 537. These facts were unknown to Everett Bros., Gibson & Co. at the time they proved their claim and received the dividend. Upon the discovery of that fraud they repudiated the proof of claim so far as it includes the amount of the draft in question, and insisted upon their right to recover the proceeds of the notes of the plaintiff; and this, I think, they had a right to do. On the whole case, I think Everett Bros., Gibson & Co. are entitled to the fund in question, and judgment is ordered accordingly.