## OWNERSHIP OF CHECKS DEPOSITED IN BANKS.

Circuit Court of Summit County.

MINOR H. HOWE v. THE AKRON SAVINGS BANK COMPANY.

Decided, December 30, 1905.

*Deposit in Insolvent Bank—Actual Knowledge of Insolvency by Officers Necessary to Recovery Back—Checks and Drafts Deposited to be Treated the Same as Money.*

1. A deposit made in an insolvent bank may be recovered back in an action against a receiver of the bank, only when it is shown that at the time the deposit was received the officials of the bank knew or believed that it was insolvent.

2. Checks and drafts upon banks deposited with money and passed to the depositor's credit are to be treated as becoming the property of the bank, raising the relation of debtor and creditor, unless there is an express agreement that they are deposited for collection only.

WINCH, J.; HENRY, J., concurs; MARVIN, J., not sitting.

This matter was heard on appeal, the direction of the court being requested by the receivers of the bank on a claim for preference made by D. W. Bowman, one of the creditors of the bank, who, on April 4th, 1904, at about noon, deposited with it certain money, a New York Bank draft and certain checks on other banks, the total amount of which was credited to him on his pass-book and on the books of the bank. At nine o'clock the next day, April 5th, 1904, the doors of the bank were closed and the receivers took possession of all the assets and property of the bank. The draft and checks had been forwarded to the bank's correspondents and charged on their respective accounts before the receivers took charge, but they subsequently collected from the bank's correspondents the amounts due from them as shown by said accounts, including the amount of said draft and checks.

At the time of receiving said deposit the bank was insolvent. The receivers allege that this fact was unknown to the bank at the time it received Bowman's deposit. Bowman alleges that the

fact of said insolvency was then known, or, by the exercise of ordinary care and diligence, ought to have been known to the bank's officers and directors. Upon this issue affidavits have been filed, which fail to establish the fact that the officers of the bank. or its directors, know of that insolvency at the time they received Bowman's deposit, but tend to establish the fact that might have known had they used such care and diligence. Upon these facts Bowman claims he is entitled to preference for two reasons, first, the act of the bank in receiving the deposit when it was insolvent was such a fraud upon the depositor as to authorize him to rescind the transaction and recover from the receiver the amount of said deposit, or at least the drafts and checks, provided the bank at the time knew, or by the exercise of ordinary care and diligence might have known, that it was insolvent.

The trouble with this proposition is that it goes one step further than the adjudicated cases on the subject by introducing the suggestion that fraud exists if the bank officials might have known of the insolvency. The true rule is stated by Judge Cook in the recent case of *Baker* v. *Orme*, 6 C.C.(N.S.), 289, and the reasons for the rule given in the case of *Quin* v. *Earl*, 95 Fed. Rep., 728, where it is said " * * * the officers of the bank must have known or believed that it was insolvent at the time the deposit was received; and such knowledge can not be presumed, but must be proved." See also *Woodworth* v. *Paige*, 5 O. S., 71: "Having failed to prove that the bank officials had such knowledge, claimant is not entitled to rescind the transaction for fraud."

Second. It is claimed that title to the draft and checks deposited by Bowman, as distinguished from the money deposited by him, did not pass to the bank.

In this connection another allegation should be read from the motion:

"These receivers further say that it was the custom of said bank to credit to the accounts of its respective depositors checks and drafts deposited by them at the time of making such deposits, and if payment of any such checks or drafts was thereafter refused by the drawers or makers thereof, or if any such checks or drafts were dishonored and not collected by said

savings bank company, the amount of such checks or drafts thus unpaid or remaining uncollected was required to be made good by the depositor or depositors thereof.''

The proposition of law thus raised is stated as follows, in *Zane on Banks and Banking*, Section 133:

''Ordinarily a man who has checks or drafts takes them to a bank and deposits them for credit to himself. If nothing is said or written to indicate the intention, the deposit is for the depositor's credit. But where such a deposit is made, the question as to where the title remains is a much debated contention. If the checks or drafts are on the particular bank in which they are deposited, a credit of them as cash to the depositor is payment, and by the great weight of authority that payment is final and irrevocable. The checks, thereupon, have passed from the ownership of the depositor. Where the checks and drafts deposited for credit are on another bank than the one receiving them it is usual for them to be credited as cash. The point is, however, whether they pass to the bank as owner, or as a mere bailee, where they are credited as cash. Some courts erroneously say that, if the depositor is allowed to check against the deposit, the title is in the bank. Other courts deny this, and say the right to check against the deposit is a mere privilege.

''This latter idea is the true one, because there is no question on the authorities but that the bank, having received checks or drafts on other banks as cash credited, has the right to revoke the credit if the collection is not made; but this would not be possible if the title had passed.''

The leading authority sustaining the contention of claimant is *City of Somerville* v. *Beale, Receiver*, 50 Fed. Rep., 647.

The contrary doctrine is expressed in *Metropolitan National Bank* v. *Lloyd*, 90 N. Y., 530:

''M, who kept an account with the M. & M. Bank of Troy, deposited with that bank a check given for value, drawn by defendant payable to the order of M and indorsed by him in blank. Said bank credited the amount of the check in M's bank passbook, which was returned to him, and on the same day it mailed the check to plaintiff, its correspondent in New York, and its creditor, to be, credited on account, and it was so credited. M stopped payment of the check and when plaintiff caused payment to be demanded from the drawee it was refused. Notice of presentation and protest was given to defendant who subsequently paid the amount to M. In an action upon the check, *Held*:

That upon the deposit the M & M bank became the owner of the check, and as such could and did give a perfect title to its transferee; and that plaintiff was entitled to recover.''

It is true that at any early date a deposit of money with a bank was considered as a bailment. The very word ''deposit'' is the technical designation of one kind of bailment, but from the fact that all depositors in banks were soon presumed to know that banks treated moneys deposited with them as their own and used them as such, in fact, could not do business at a profit unless they did, the courts long since decided that a general deposit of money with a bank created the relation of debtor and creditor, and that the relation of bailee and bailor no longer existed. Why the old theory of bailment should be maintained in Ohio at this day with regard to checks and drafts does not clearly appear. It can not be because of any custom of the bank to charge back against the depositor's account the amount of any worthless checks; for that right exists in Ohio under the name of set-off (*Bank* v. *Brewing Co.*, 50 O. S., 151). It is true that in the case cited that bank applied the deposit on the note of its depositor to it, but in the case of a deposit of checks and drafts, the depositor indorses them and thus becomes himself liable to the bank on them. In this view of the case the evidence as to the custom of banks is immaterial and irrelevant. The reason for preserving the distinction between moneys deposited in banks and checks or drafts so deposited having failed in Ohio, we see no reason for applying the rules of the law of bailment to the deposit of checks and drafts as claimed by Bowman, and, therefore, deny the preference he claims.

The conclusion here reached seems to have been assumed to be the law of Ohio by Judge Cook in the case above referred to, for on page 468, in stating the facts of that case, he says:

''The money and checks were credited as one item in the pass book of plaintiff and passed to his credit in the bank, he at that time having a credit in the bank of $100 which made a balance in his account of $383. This deposit was made in the usual course of business of depositors, nothing being said about collecting the checks for plaintiff and no doubt it was a general deposit and the relation of debtor and creditor immediately took place.''

We are not inclined to think that the line of federal authorities cited by counsel for claimant are sustainable upon the doctrine of fraud and rescission, and not under the law of bailment, and this view is sustained by the case in 95 Fed. Rep., 728, where most of said cases are reviewed.

Decree may be drawn as here indicated.