THE METROPOLITAN NATIONAL BANK OF NEW YORK, Respondent, *v.* WILLIAM LOYD, Appellant.

M., who kept an account with the M. & M. Bank of Troy, deposited with that bank a check given for value, drawn by defendant payable to the order of M., and indorsed by him in blank. Said bank credited the amount of the check in M.'s bank pass-book, which was returned to him, and on the same day it mailed the check to plaintiff, its correspondent in New York, and its creditor, to be credited on account, and it was so credited. M. stopped payment of the check, and when plaintiff caused payment to be demanded of the drawee it was refused. Notice of presentation and protest was given to defendant who subsequently paid the amount to M. In an action upon the check, *held*, that upon the deposit the M. & M. Bank became the owner of the check, and as such could and did give a perfect title to its transferee ; and that plaintiff was entitled to recover.

The answer contained no allegation of fraud on the part of the M. & M. Bank, or that it received and credited the check in contemplation of insolvency. On the trial defendant offered to show that it was known to said bank at the time that it was insolvent. This was rejected. *Held* no error.

As to whether such a defense could have been availed of under any circumstances, *quære.*

(Argued November 21, 1882; decided December 15, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 19, 1881, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 25 Hun, 101.)

This was an action by the plaintiff as indorsee of a check for $305, dated New York, October 29, 1878, drawn by the defendant upon the Corn Exchange Bank, payable, for value, to the order of Edward F. Murray, and by him indorsed in blank and delivered to the Merchants and Mechanics' Bank in Troy, by whom it was transferred to the plaintiff.

The defendant set up by answer that the check was deposited by Murray in the Troy bank for collection, that Murray, before payment of the check, gave notice to the Corn Exchange Bank not to pay the same, and it obeyed his directions, whereupon the defendant sent Murray $305 in payment of the check.

The issues were tried before a referee, and he, in addition to the facts already stated in regard to the inception and different transfers of the check, found that Murray kept an account with the Troy bank, and on the 30th day of October deposited the check with it; that the bank received it as a deposit of money, entered the amount as cash to the credit of Murray in his bank pass-book, and returned his pass-book to him; that on the same day the Troy bank mailed the check to the plaintiff, its correspondent in New York, and its creditor, to be credited on account of its indebtedness, and it was so credited; that on the next day the plaintiff caused payment of said check to be demanded of the Corn Exchange Bank, who refused to comply, on the ground that payment had been stopped, and on the same day notice of presentment and protest was given to the defendant. As conclusion of law he found that upon the deposit of the check by Murray with the Troy bank, it became

the owner of the check and debtor to Murray for its amount, thereby denying the allegation in the answer as to the purpose and effect of the deposit. He also found the other facts which, if this conclusion is correct, enable the plaintiff to maintain the action.

*C. Van Santvoord* for appellant. The book credit, on its entry according to the custom of the bank on entering the check on deposit, would be incipient or *inchoate,* and not a standing credit until the money should be collected. (*Germ. Am. Bk.* v. *Third Nat. Bk.*, 18 Alb. L. J. 252–254.) By the suspension of proceedings and failure of the bank and the countermand of the payment under the circumstances, the provisional credit came to naught, and any right of the bank as holder for collection for account of Murray was put an end to. (Morse on Banks and Banking [2d ed.], 302.) The deposit of the check as such, by reason of the receipt by Murray of a voluntary credit of the amount as cash in his pass-book, was not a deposit of money, the deposit being made in a course of dealing between the bank and Murray, by which the check on non-payment was to be returned and the credit canceled but a deposit of the check, as a specific security. (*Thompson* v. *Giles*, 2 B. & C. 422; 9 E. C. L. 127; *Giles* v. *Perkins*, 9 East, 12–14; *Parke* v. *Elliason*, 1 id. 544; *Jombart* v. *Woolet*, 2 M. & C. 390; *Kip* v. *Bk. of N. Y.*, 10 Johns. 63; *Thompson* v. *Perkins*, 3 Mason, 232, 235; *Biebinger* v. *Contl. Bk.*, 99 U. S. 143; *Germ. Am. Bk.* v. *Third Nat. Bk.*, 18 Alb. L. J. 252–254; *Montgomery Co. Bk.* v. *Albany City Bk.*, 7 N. Y. 459–460; *Scott* v. *Ocean Bk.*, 23 id. 289; *Dickerson* v. *Wasson*, 47 id. 439; *Shipsey* v. *Bowery Nat. Bk.*, 59 id. 485, 490.) The circumstances of the deposit and receipt of the check by the bank at Troy, and of its course of business in dealing with like checks when deposited by its customers, repel any conclusion of its being either deposited or received as money for which the bank would be responsible absolutely on and from the deposit. (*Scott* v. *Ocean Bank*, 23 N. Y. 289; *Dickerson* v. *Wasson*, 47 id. 439–441; *Shipsey* v. *Bowery*

*Nat. Bk.*, 59 id. 490.) The Merchants and Mechanics' Bank not being the owner, but the holder only, of the check for collection for account of Murray, and there being nothing in the state of the account between the bank and Murray to warrant it, its transmitting the check for its account to the plaintiff, to be applied as a credit on the former's prior indebtedness, was a wrongful diversion and appropriation to its use of the check. (*Comstock* v. *Hier*, 73 N. Y. 273, 274 ; *Woodhull* v. *Holmes*, 10 Johns. 231 ; *Murray* v. *Burling*, id. 172 ; *Wardell* v. *Howell*, 9 W. R. 170 ; *Small* v. *Smith*, 1 Denio, 583 ; *Turner* v. *Treadway*, 53 N. Y. 650 ; *Weaver* v. *Barden*, 49 id. 286 ; *Evans* v. *Kyrer*, 1 B. & A. 528 ; *Cranch* v. *White*, 1 Bing. N. C. 414 ; *Jones* v. *Fort*, 9 B. & C. 764 ; *Moore* v. *Ryder*, 65 N. Y. 438.)

*Fisher A. Baker* for respondent. Plaintiff's title to the check in suit was good. (*Grocers' Bk.* v. *Penfield*, 69 N. Y. 502 ; *Comstock* v. *Hier*, 73 id. 269 ; *Ex parte Thompson*, 1 M. & M. A. 102.) By the deposit in the Merchants and Mechanics' Bank, and the acceptance of the bank's acknowledgment of indebtedness, the title to the check vested in the bank. (Story on Bailments, § 88 ; *Keene* v. *Collins*, 1 Metc. [Ky.] 415 ; *Brahm* v. *Adkins*, 77 Ill. 263 ; *Clark* v. *Merchants' Bk.*, 2 N. Y. 383 ; *Foley* v. *Hill*, 2 H. of L. Cas. 28 ; *Matter of Franklin Bank*, 1 Paige, 249 ; *Chapman* v. *White*, 6 N. Y. 412 ; *Carroll* v. *Cone*, 40 Barb. 220 ; *Marsh* v. *Oneida Bk.*, 34 id. 298 ; *Ætna Nat. Bk.* v. *Fourth Nat. Bk.*, 46 N. Y. 82 ; *Atty.-Gen.* v. *Contl. L. Ins. Co.*, 71 id. 331 ; *Com. Bk. of Albany* v. *Hughes*, 17 Wend. 94 ; *Downes* v. *Phœnix Bk.*, 6 Hill, 297 ; *Marine Bk.* v. *Fulton Bk.*, 2 Wall. 256 ; *Jordan* v. *Nat. Shoe & Leather Bk.*, 74 N. Y. 473 ; *Scammon* v. *Kimball*, 92 U. S. 369 ; *Phelan* v. *Iron Mountain Bk.*, 16 Nat. Bk. Reg. ; *Matter of Franklin Bk.*, 1 Paige, 254 ; *Chapman* v. *White*, 6 N. Y. 412 ; *Bk. of Republic* v. *Millard*, 10 Wall. 152 ; *Pott* v. *Clegg*, 18 M. & W. 328 ; *Stuyvesant Bk.* v. *Nat. Mechs'. Bkg. Assn.*, 7 Lans. 203 ; *Nat. M. Bk.* v. *Peck*, 127 Mass. 301 ; Story on Agency, § 228, n. 3 ; Morse

on Banking, 424 [last ed.] ; *Van Amee* v. *Bk. of Troy*, 8 Barb. 316; Grant on Banking, 175 ; *Ex parte Thompson*, 1 M. & M. A. 102 ; *Thompson* v. *Riggs*, 5 Wall. 680 ; *Bent* v. *Puller*, 5 Term R. 496 ; *Ex parte Clutton*, 2 Fonblanque, 167 ; *Giles* v. *Perkins*, 9 East, 12 ; *Thompson* v. *Giles*, 2 B. & C. 422.)

DANFORTH, J. The question turns upon the character of the transaction between Murray and the Troy bank, and although the appellant's case has been presented with more than usual ingenuity, we find no reason to doubt the correctness of the answer given to the question by the referee, and concurred in by the General Term, after an opinion by one of its learned judges (25 Hun, 101), which so fully reviews the evidence and the authorities, that we should be content with simply expressing our concurrence, if the case had not been sent here by that court as involving a question of law which ought to be reviewed.

The argument of the learned counsel for the appellant assumes and starts from the very point in dispute — it rests on the assertion that the Troy bank became the depositary merely of the check, on condition that in case of non-payment it should be returned to Murray and the credit canceled, or, as it is also put, became the holder of the check as the agent of Murray for collection for his account. These propositions differ in form only, and in either shape are at variance with the finding of the referee. The latter must prevail. It is not disputed that Murray held the check as owner — it was his property to do with as he pleased. He had held other checks. Some of these he placed in the Troy bank for collection ; others he deposited and took credit therefor as cash upon his pass-book. As to the first he could give and revoke his own directions as often as he chose, but as to the others when they were by his direction credited to him, the title passed to the bank, and they were not again subject to his control. This we understand to be the result of the general rule applicable to such transactions. (*Scott* v. *Ocean Bank in city of New York*, 23 N. Y. 289 ; Story on Bailments, § 88 ; *Keene* v. *Collier*, 1 Metc. [Ky.] 415 ;

*Brahm* v. *Adkins*, 77 Ill. 263 ; *Chapman* v. *White*, 6 N. Y. 412; *Bank of the Republic* v. *Millard*, 10 Wall. 152 ; *In re Franklin Bank*, 1 Paige, 254; *Clark* v. *Merchants' Bank*, 2 N. Y. 380.)

The check in question was of the last class. It is true no express agreement was made transferring the check for so much money, but it was delivered to the bank and accepted by it, and the bank gave Murray credit for the amount, and he accepted it. That was enough. The property in the check passed from Murray and vested in the bank. He was entitled to draw the money so credited to him, for as to it the relation of debtor and creditor was formed, and the right of Murray to command payment at once was of the very nature and essence of the transaction. On the other hand, the bank, as owner of the check, could confer a perfect title upon its transferee, and, therefore, when by its directions the plaintiff received, and gave credit for it upon account, it became its owner and entitled to the money which it represented. The check, therefore, for every purpose material upon this inquiry, as between these parties was money. But even if the check had remained in the hands of the Troy bank, Murray could not have reclaimed it. If, as the appellant insists, the check had been deposited for a specific purpose — for collection, the property would have remained in the depositor, but there is no evidence upon which such fact could be established, nor is it consistent with the dealings between the parties, or with any of the admitted circumstances.

These show that it was the intention of both parties to make the transfer of the check absolute, and not merely to enable the bank to receive the money upon it, as Murray's agent. The appellant assumes the contrary; but the referee refused to find in accordance with the defendant's theory, and upon the evidence his refusal was well founded.

The cases cited by the appellant have been examined; most of them are considered in the opinion of the General Term, *supra*, and the others lend no support to his contention, except

upon the theory, which we think untenable, that the check was deposited for a specific purpose, and not generally.

The appellant urges that the check was not delivered by Murray as the result of a negotiation or application for its discount or sale, or for a credit, and if we look for such negotiation in the words of the parties only, this must be conceded; but if we take the conduct of the parties during the transaction, it is otherwise. They adopted a mode of intercourse which fulfilled the function of spoken words, and brought about a result as intelligibly as words could have done. Suppose Murray, handing the check to the cashier, said, "buy this," or "give me the money on this," or "discount it for me," and the cashier taking the check, gave back at the same moment its amount, there would then have been the express agreement which the appellant thinks necessary, and no one would doubt that the title to the check and money changed from one to the other, that thereby Murray incurred a contingent liability to the bank as indorser of the check, and that he could again obtain it only by a new bargain. So if instead of giving the money the cashier had said "yes" to the application of Murray, and Murray had replied, "place it to my credit," or had himself taken the money and deposited it, the result would have been the same. What was actually done by the parties amounted to this. Murray noted the check and its amount, and also another check upon a deposit slip or memorandum in these words:

"Deposited in the Merchants and Mechanics' Bank by Ed. F. Murray, Troy, October 30, 1878.

| | |
|---|---:|
| Check...................................... | $305 |
| Check...................................... | 9 |
| | $314 " |

gave it with the checks to the cashier, and he entered the gross amount on the credit side in Murray's book as cash, and returned the book to him. He examined it at that time. The bank thereby charged itself with a debt absolutely due to

Murray (*Commercial Bk. of Albany* v. *Hughes,* 17 Wend. 94), and he held the promise or obligation of the bank available to himself from that moment.

Another point is made by the learned counsel for the appellant. Upon cross-examination of one of the officers of the Troy bank, it appeared that on the 31st day of October, after examination of its affairs, by the bank superintendent, its business was suspended. The witness was then asked whether " before that examination it was known that a state of things existed that would justify an injunction — was it known in the bank that it was insolvent." Upon objection made, the appellant offered to show that it was known to the bank that it was insolvent, and that being rejected, an exception was taken. This is now relied upon. It should not prevail. There is no allegation in the answer that fraud was practiced by the bank upon Murray, or that in receiving the deposit and giving credit to him there was any intent to withhold the sum credited, or that it was done in contemplation of insolvency. Moreover it is plain that the bank continued, after the deposit, debtor to Murray by his own choice, and not by reason of its solicitation or act. He could have drawn the amount the moment credit was given, and, in not doing so, consulted his own pleasure or convenience. Whether such defense, therefore, would, under any circumstances, avail the defendant it is not necessary to inquire. No ground is assigned by the learned counsel upon which any other exception taken for the appellant can be supported, and we discover none.

The judgment should be affirmed.

All concur, except TRACY, J., absent.

Judgment affirmed.