[5, 6] Now the following defects or omissions appear from the record submitted: First. There is a break in the chain of title to the grantee, Andrew Nostrand, who conveyed to Ryder in 1841; no deed showing how Nostrand obtained title. This occurs so early in the record that it might be overlooked if the property had been actually occupied and in the physical possession of all subsequent record owners, or in fact had been in possession of the record owners for the past 20 years. The certificate, records, and testimony are silent upon this point. As the property consists of marsh and beach land, the presumption of possession cannot follow from mere record title which does not run back to the original grant or patent. Miller v. L. I. R. R., 71 N. Y. 380. The only statement regarding possession is that of a present tenant, without mention of the landlord. In view of the answer possession should have been established by oral proof. Second. Title is traced through a will into Annie E. Brandreth, but there is no record of conveyance from her to John Kinzie, who thereafter conveyed. I assume that the statement as to this deed is correct, but there is no proof as required by law. This is cured apparently by a deed from Annie A. Brandreth to Charles Crabbe, the plaintiff. It is not contained in the examiner's certificate or any of the records submitted on the trial amounting to proof. The examiner submits an affidavit stating the fact, which is not a part of the chain of title or certificate. This I deem insufficient proof. Third. The deed conveying this property into the plaintiff would take the northerly line to the high-water line of Barbadoes creek. The title sought to be registered would extend the property on the north to the bulkhead line, but there is no evidence whatever to show that the bulkhead line is at high-water mark. It may have extended far out into the tide water of the creek, and, if so, the plaintiff shows no title to the land under water.

There may be other minor defects, but for the purposes of decision these are sufficient, and I shall in consequence deny the application, without costs to anybody.

---

## LYONS v. UNION EXCH. NAT. BANK OF NEW YORK.

(Supreme Court, Appellate Division, First Department. May 3, 1912.)

1. BANKS AND BANKING (§ 126*)—DEPOSIT OF CHECKS BY CUSTOMER—RIGHTS OF PARTIES.

   A bank, though giving a customer a credit on the deposit of a check drawn by him on another bank against which he may draw, may on the return of the check unpaid charge it back to the customer.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 305, 309; Dec. Dig. § 126.*]

2. BANKS AND BANKING (§ 127*)—DEPOSIT OF CHECKS BY CUSTOMER—RIGHTS OF PARTIES.

   Where a check drawn by a third person is deposited in a bank by a customer in the ordinary course of business, and is accepted and credited

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as money; the title passes to the bank, though there is no express agreement.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 304, 310; Dec. Dig. § 127.*]

3. BANKS AND BANKING (§ 127*)—DEPOSIT OF CHECKS BY CUSTOMER—RIGHTS OF PARTIES.

Where a customer deposited in a bank a check drawn by him on another bank, and the bank accepts the check as cash and gives an unqualified credit therefor, it becomes a holder thereof.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 304, 310; Dec. Dig. § 127.*]

4. BANKS AND BANKING (§ 127*)—DEPOSIT OF CHECKS BY CUSTOMER—RIGHTS OF PARTIES—"HOLDER."

Under Negotiable Instruments Law (Consol. Laws 1909, c. 38) §§ 2, 324, defining a holder as the payee or indorsee of a bill or note in possession, and declaring that, where the holder of a check procures it to be accepted or certified, the drawer is discharged from liability, and independent thereof, a bank giving a customer credit on the deposit of a check drawn by him on another bank and obtaining a certification from the other bank may not, on the check being returned unpaid, hold the depositor liable thereon, the bank receiving the check as a deposit with a deposit slip and a delivery of the passbook containing a credit entry, and a credit on the bank's books.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 304, 310; Dec. Dig. § 127.*

For other definitions, see Words and Phrases, vol. 4, pp. 3319, 3320.]

Ingraham, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by John J. Lyons, as treasurer of the Fraternal Order of Eagles, New York Aerie No. 40, an unincorporated association consisting of seven or more persons, against the Union Exchange National Bank of New York. From a judgment entered on a dismissal of the complaint at the close of the evidence, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

George W. Glaze, of New York City, for appellant.
Sydney H. Herman, of New York City, for respondent.

MILLER, J. The plaintiff, claiming to have on deposit with the defendant bank at least the sum of $13,000, brought this action to recover that sum on the ground that the defendant had refused to honor the plaintiff's check duly presented for said amount. The defendant for answer asserted that, when the check was presented, the plaintiff had on deposit only the sum of $2,555.29. The case turns on a deposit on April 13, 1904, by the plaintiff in the defendant bank of a check for $13,000, drawn by the plaintiff upon the Federal Bank of New York to the order of the defendant, with which deposit the plaintiff's account with the defendant was opened. According to the evidence of the plaintiff, the check was presented by it with a deposit slip pursuant to a prior arrangement and upon the defendant's solicitation to open an account. A passbook was delivered to

the plaintiff at the time of the deposit in which the amount was credited to the plaintiff as cash and a similar credit entry was made on the books of the defendant. Later in the day the check was presented to the Federal Bank for payment. The latter declined to pay cash, but offered to, and did, certify the check, making it payable at the Importers' & Traders' National Bank. The defendant's evidence is to the effect that its messenger was instructed to procure either cash or a certification, and it did accept a return of the check thus certified. The check was thereafter and on the same day, but after banking hours, presented to the Importers' & Traders' Bank for payment, but payment was refused; the reason assigned being that it was after banking hours. The defendant then indorsed the check payable to the order of the National Bank of Commerce of New York, and deposited it with the latter on the following morning to be put through the clearing house. It was returned to the defendant on that day with a slip marked, "Bank closed." There is a sharp conflict in the testimony as to the circumstances attending the deposit of the check by the plaintiff. According to the defendant's evidence, its president stated to the agent or officer of the plaintiff who presented the check that the Federal Bank was in a shaky condition, and that the defendant would not accept the check as a deposit, whereupon it was agreed that the defendant should take the check for collection as the plaintiff's agent, and all of the subsequent steps were taken with the knowledge and at the request of the plaintiff. According to the plaintiff's evidence, nothing whatever was said as to the condition of the Federal Bank or as to the defendant's taking the check for collection or as to what the defendant should do in the effort to collect the check for the plaintiff; the case standing according to the plaintiff's evidence upon the bare deposit of the check with a deposit slip and the delivery of the passbook containing the credit entry and the credit upon the books of the defendant.

The plaintiff raises a question of pleading which we do not consider it necessary to discuss at length.

[1] Irrespective of whether the defendant gave the plaintiff a credit against which the latter was permitted to draw, it had the right upon the return of the check to charge it back. The issue as framed by the pleading was whether the plaintiff had $13,000 to its credit when the defendant refused to pay its check for that amount. Upon the merits, however, we think there was a question of fact for the jury.

[2, 3] The respondent does not question the general rule that, where a check is deposited by a customer in a bank in the ordinary course of business and is accepted and credited as money, the title passes to the bank, even though there be no express agreement. Metropolitan National Bank v. Loyd, 90 N. Y. 530; Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9. But the respondent contends that that rule does not apply where the check is drawn by the depositor that, in such case, the bank merely constitutes itself an agent for the depositor to transfer the latter's funds from some other bank to itself. But we fail to perceive any distinction in principle between

the two cases. It may be, as contended, that the practical result is a temporary loan without interest pending the collection of the check. But that is the effect of the transaction in either case; the only difference being that, where the check is drawn by a third party, the bank has more security. We see no reason why a bank may not accept a depositor's check as cash precisely as it might credit his account with the proceeds of a note made by him. It can easily protect itself by taking the check only for collection, as, according to the defendant's evidence, it did in this case; and it is familiar practice for banks to accept items for collection only, making an entry in the back of the depositor's passbook to characterize the transaction as such and not entering the deposit as cash until the collection is made. In this case, according to the plaintiff's evidence, the defendant accepted the check as cash precisely as was done in the case of Metropolitan National Bank v. Loyd, supra. The case is the same as though the defendant had delivered cash to the plaintiff, which the latter immediately deposited. We think that, if the defendant accepted the check and gave an unqualified credit therefor, it became a holder thereof. It is of no consequence that it was not a holder in due course within the law merchant, and cases like Citizens' State Bank v. Cowles, 180 N. Y. 346, 73 N. E. 33, 105 Am. St. Rep. 765, have no application.

[4] It was the law in this state, prior to the passage of the Negotiable Instruments Law, that the holder of a check by procuring it to be certified discharged the drawer from liability, for the obvious reason that the drawer of a check, after it is certified, cannot draw out the funds necessary to meet it. The money ceases to be his, and is appropriated to the payment of the check. First National Bank of New Jersey City v. Leach, 52 N. Y. 350, 11 Am. Rep. 708. Section 324 of the Negotiable Instruments Law provides: "Where the holder of a check procures it to be accepted or certified the drawer and all indorsers are discharged from liability thereon." And section 2 of the Negotiable Instruments Law defines "holder" to mean "the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." But it is said that that rule does not apply to the case of a bank which has taken its depositor's check. Again we fail to perceive how in principle such a case is to be distinguished from any other; the reason for the rule being that the effect of certification is to deprive the drawer of the right to the funds on deposit with the drawee bank, necessary to meet the check. The plaintiff in this case might, but for the certification, have withdrawn its deposit from the Federal Bank on the morning of April 14, 1904, before the latter closed. That possibility, theoretical as it may have been in this case, was by the defendant's act made impossible. It is said that the rule applies only where the acceptance of certification is voluntary on the holder's part. Again, that assumes the fact to be decided. The defendant's messenger was instructed to procure cash or a certification. When he presented the check to the drawee bank, the latter's president said: "You cannot get no (sic) cash for that. I will certify that check for you"—and so the messenger accepted

the certification, as he had been instructed to do. It does not necessarily follow, in theory at least, that payment in cash could not have been procured if insisted upon. But, even if such payment could not have been obtained, the defendant was not obliged to accept the certification. It should have treated the check as dishonored, and should have given notice thereof to its depositor, the drawer, who could then determine what steps to take to protect itself. In all probability it could not have succeeded in getting its money, but it was entitled to an opportunity to make the attempt. We are dealing with rules of the law merchant, and it is of no consequence that it is plainly to be inferred in this case that the plaintiff could not have succeeded in drawing $13,000 out of the Federal Bank either on April 13 or on the morning of April 14, 1904. As we view it, the case turns on the question whether the defendant acted as the plaintiff's agent in procuring the check to be certified. That depends upon what was said when the check was deposited with the defendant by the plaintiff. Whatever our opinion may be as to which version of the transaction is to be believed, the question was one of fact, and should have been submitted to the jury.

The judgment should therefore be reversed, and a new trial granted, with costs to appellant to abide the event.

LAUGHLIN, SCOTT, and DOWLING, JJ., concur.

INGRAHAM, P. J. (dissenting). I agree that there was a question of fact as to whether this check was deposited under such circumstances that the title to the check passed to the defendant and the plaintiff received credit therefor without qualification, and that thereby the defendant became indebted to the plaintiff in the sum for which the credit was given. The credit which is given upon such a deposit is necessarily subject to the condition that in case the check is not paid the bank can charge back to its depositor the amount of the check and thus cancel the credit.

The check in controversy not having been paid, the bank had a right to charge back the check to the plaintiff and cancel the credit given at the time of the deposit, unless the certification of the check precluded the defendant bank from exercising that right. The evidence is undisputed that the defendant as soon as it received the check at once sent it to the bank upon which it was drawn, and its messenger demanded the money from the bank. This was shortly before 3 o'clock, the close of banking hours. The bank upon which the check was drawn refused to pay it in cash, but without request from the messenger of the defendant bank certified it and handed it back to him. This was not a certification at the request of or for the benefit of the defendant. The defendant, in attempting to collect the check, was bound to exercise vigilance, and I think would be responsible only for negligence, of which there was no proof. The messenger of the defendant bank at once called up the cashier of the bank on the telephone, and said that the bank upon which the check was drawn had refused to honor it, but had certified it and made it payable at an-

other bank; and the messenger was instructed to take it at once to the bank at which it was payable and demand payment there. That, under the circumstances, was all that the defendant could do. The messenger went at once to the bank at which the check was made payable, but, arriving there a few minutes after three, payment was refused, and the next morning the bank upon which the check was drawn suspended.

The certification of a check only charges the depositary bank where that bank has accepted the certification in lieu of the collection of the money. That rule, as I understand it, does not apply where the depositary bank has endeavored to collect the check, but the bank upon which it was drawn has refused to honor it. I do not see what other steps the defendant could have taken to collect this check than it did take. It accepted the certification only because the bank has refused to honor it, and it accepted it simply as a means of obtaining payment when no other method of obtaining such payment was open to it. If it had treated the check as dishonored, all that it could have done would be to protest it for nonpayment, which would have been of no possible advantage to the plaintiff, as the bank upon which it was drawn suspended payment the next morning; and it might with force have then been claimed that, if the defendant bank had accepted the certification, it might have collected the check from the bank where it was made payable on that afternoon. There is not a particle of evidence that notice could have been given to the plaintiff of the dishonor of the check when it would have been of the slightest advantage to him.

Assuming that the defendant received this check on deposit and gave the plaintiff credit for it, it certainly cannot, as I view it, lose its right to charge back the check to the plaintiff if it was not paid, where it exercised due diligence to collect the check, and only failed because of the insolvency of the bank upon which it was drawn.

I think the undisputed evidence in this case shows that the defendant did everything that it could do to collect the check, and that the complaint was, therefore, properly dismissed.