JAFFE et al. v. WELD et al.

(Supreme Court, Appellate Division, First Department. February 7, 1913.)

1. TRUSTS (§ 349*)—CONSTRUCTIVE TRUSTS—GROUNDS—FRAUD.

One deprived of his property by fraud may, if he can identify it or trace the proceeds derived from its sale, impress a trust on it or the proceeds, whether in the hands of the wrongdoer or any person taking title through him, unless title is taken in good faith and for value, though the wrongdoer or the person to whom title has been transferred is insolvent.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 514; Dec. Dig. § 349.*]

2. TRUSTS (§ 358*)—CONSTRUCTIVE TRUSTS—FOLLOWING TRUST PROPERTY.

To follow trust funds into other property and impress it with a trust, the funds must be clearly traced and distinctly proved to have been invested in other property, and there must be a direct and unbroken connection between the two.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 523, 553; Dec. Dig. § 358.*]

3. TRUSTS (§ 358*)—CONSTRUCTIVE TRUSTS—FOLLOWING TRUST PROPERTY.

A dealer drew drafts, to which forged bills of lading were attached, and the same were forwarded to its agent, with directions to sell. Plaintiff, relying on the bills, purchased the drafts from the agent, and paid him therefor. To facilitate the remittance to the dealer of the money paid by plaintiff to the agent, the dealer drew currency drafts on the agent and deposited them in a bank, which gave a credit therefor to the dealer and forwarded them to its correspondent, where they were paid by the agent with the money received from plaintiff. The deposit of the currency drafts was made for the purpose of crediting the same to the account of the dealer. The dealer, by means of the credit, purchased cotton, which was subsequently transferred to defendant for an antecedent debt. *Held*, that plaintiff could not impress the cotton in the hands of defendant with a trust, since it was not purchased with his money.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 523, 553; Dec. Dig. § 358.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Max Jaffe and others against Stephen M. Weld and others. From an order sustaining a demurrer to the complaint, and from an order providing for the dismissal of the complaint, unless amended within 20 days, plaintiffs appeal. Affirmed.

See, also, 149 App. Div. 942, 133 N. Y. Supp. 1127.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and DOWLING, JJ.

George T. Hogg, of New York City, for appellants.

Edward H. Blanc, of New York City, for respondents Weld and others.

R. L. Von Bernuth, of New York City, for respondent Pyle.

McLAUGHLIN, J. Action to impress a trust upon certain cotton in the possession of the defendants, upon the theory that it was pur-·chased with funds obtained from the plaintiffs by fraud, and that defendants obtained possession of the cotton with notice of the fraud, and without paying value therefor. The defendants demurred to the complaint, upon the ground, among others, that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, with leave to serve an amended complaint (132 N. Y. Supp. 505), and on appeal the order sustaining the demurrer was affirmed (149 App. Div. 942, 133 N. Y. Supp. 1127). The plaintiffs thereafter served an amended complaint, to which the defendants again demurred, on substantially the same ground as before. After the demurrer had been interposed, the plaintiffs moved for judgment on the pleadings, and from an order sustaining the demurrer, and an order dismissing complaint, unless further amended within 20 days, the plaintiffs appeal.

The amended complaint alleges, in substance, that between the 5th and 20th of April, 1910, the firm of Steele, Miller & Co., merchants doing business in the state of Mississippi, drew five foreign drafts, payable to its own order, aggregating upwards of $68,000; that attached to these drafts were eight forged bills of lading, each one purporting to cover 100 bales of cotton, deliverable to its own order at a foreign port named; that it indorsed the drafts and bills of lading, and forwarded the same to one Van Gerpen, its New York agent, with direction to sell the same; that the plaintiffs, bankers doing business in the city of New York, relying upon the forged bills of lading, purchased the drafts from Van Gerpen, and after deducting exchange, etc., paid him therefor $68,676.25; that cotton called for by the bills of lading was never shipped, nor was any part of the drafts paid, though duly presented for payment; that to facilitate the remittance to Steele, Miller & Co. of the money paid by plaintiffs to Van Gerpen, Steele, Miller & Co. drew certain "currency" drafts upon Van Gerpen, and deposited them in banks in Mississippi, which, in turn, forwarded them to their correspondents in New York, where the same were paid by Van Gerpen with the money received from the plaintiffs; and that the balance in excess of the "currency" drafts was transmitted by Van Gerpen in other unspecified ways.

There is no allegation in the complaint that the "currency" drafts

were deposited for collection. On the contrary, it is alleged, or is fairly to be inferred from the allegations upon that subject, that the banks, immediately upon receipt of the "currency" drafts, placed them to the credit of Steele, Miller & Co.; it having previously given to them security to insure the acceptance and payment thereof. The amount thus credited was mingled with other credits in the general credit account which Steele, Miller & Co. had in such banks. Subsequently Steele, Miller & Co. purchased the cotton on which it is now sought to impress a trust, and paid for the same by checks on such accounts. Some of the cotton thus purchased was transferred to the defendant Stephen M. Weld & Co. The transfer was made in consideration of an antecedent indebtedness, and with the intent of giving to Stephen M. Weld & Co. a preference over other creditors of Steele, Miller & Co.; it in the meantime having become insolvent, and thereafter being adjudicated a bankrupt. The balance of the cotton passed to and is held by its trustee in bankruptcy. The judgment demanded is, among other things, that a trust be impressed upon the cotton, or the proceeds derived therefrom by the defendants, and for an accounting.

[1] One who has been deprived of his property by fraud may, in case he can identify it or trace the proceeds derived from its sale, impress a trust upon it or the proceeds, whether in the hands of the wrongdoer or any person who takes title through him, unless it be in good faith and for value (Lightfoot v. Davis, 198 N. Y. 261, 91 N. E. 582, 29 L. R. A. [N. S.] 119, 139 Am. St. Rep. 817, 19 Ann. Cas. 747; Welch v. Polley, 177 N. Y. 117, 69 N. E. 279; Newton v. Porter, 69 N. Y. 133, 25 Am. Rep. 152); and this even though, at the time the trust is sought to be impressed, the wrongdoer, or the person to whom the title has been transferred, is insolvent and unable to pay his other creditors (Matter of Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504; Pennell v. Deffell, 4 De G., M. & G. 387). This is upon the theory that the property, or the proceeds, belongs to the person defrauded, and the one who defrauded him, or the transferee, holds it as trustee for his benefit. Lightfoot v. Davis, supra.

[2] But in every case the property upon which it is sought to impress the trust must be shown to be either the property of which the cestui que trust was defrauded, or proceeds derived therefrom. There must be a direct and unbroken connection between the two. This was pointed out in Ferris v. Van Vechten, 73 N. Y. 113, the court saying:

"To follow money into lands and impress the latter with a trust, the money must have been clearly traced and distinctly proved to have been invested in the lands."

And in Matter of Cavin v. Gleason, supra:

"But it is the general rule, as well in a court of equity as in a court of law, that in order to follow trust funds and subject them to the operation of the trust they must be identified."

See, also, Matter of Hicks, 170 N Y. 195, 63 N. E. 276, Holmes v. Gilman, 138 N. Y. 369, 34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463, and Cole v. Cole, 54 App. Div. 37, 66 N. Y. Supp. 314.

[3] It does not appear from the allegations of the amended com-

plaint that the cotton which has come into the hands of the defendants was purchased with the plaintiffs' money. In fact, it was purchased with money which had been on deposit to the credit of Steele, Miller & Co. in their Mississippi banks. That money, or a part of it, had been credited by the banks by reason of the "currency" drafts deposited and which were afterwards paid by Van Gerpen with plaintiffs' money. The deposit of the "currency" drafts was not made for collection, but for the purpose of being credited immediately to the account of Steele, Miller & Co., as it in fact was. The title to the drafts passed immediately to the banks and the money which they advanced was really the purchase price of the drafts. Kirkham v. Bank of America, 165 N. Y. 132, 58 N. E. 753, 80 Am. St. Rep. 714; Metropolitan Bank v. Loyd, 90 N. Y. 530; Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537. The amount thus credited was not the money paid by the plaintiffs. It was the proceeds of the "currency" drafts, and for the acceptance and payment of which the banks had taken security from Steele, Miller & Co. The fact that the "currency" drafts were accepted and paid by Van Gerpen with moneys fraudulently obtained from the plaintiffs by means of other drafts and forged bills of lading did not, for the reasons above given, enable them to have a trust impressed upon the cotton, because the same had not been purchased with their money.

I am of the opinion that the complaint fails to state a cause of action, and for that reason the orders appealed from should be affirmed, with costs. All concur.