changes have occurred in the scene, provided such changes are shown by the testimony of some one who witnessed the accident and who vouches for the verity of the picture, with the changes in conditions required to be kept in mind that the actual scene of the happening may be reproduced. But this gives no right to either party to show by whom or at whose orders any change in conditions was made after the accident. Plaintiff had no right to offer proof that the workmen of the defendant company had made any change in conditions at the scene after the accident, and the statement of plaintiff's counsel that he proposed to show that the workmen of the contracting company had moved away the obstruction and filled in part of the trench was improper, highly prejudicial to defendant, laying before the jury an intimation of proof which was inadmissible, and called for the withdrawal of a juror; the failure to grant the motion therefor constituting reversible error.

The judgment and order appealed from are reversed, and a new trial granted, with costs to appellant to abide the event. Order filed. All concur.

---

GERMAN NAT. BANK OF CINCINNATI, OHIO, v. CARNEGIE TRUST CO. et al.

(Supreme Court, Appellate Division, First Department. April 7, 1916.)

1. BANKS AND BANKING �köm159—COLLECTIONS—RELATION TO FORWARDER.
   Where checks and drafts which had been deposited in a trust company by its customers, so as to make them the property of the company, were by it transferred to a bank for collection under an arrangement whereby the bank, as soon as it received them, mingled them with its general funds and sent to the trust company a check for the amount represented, the bank became the owner of the checks and drafts, and was indebted to the trust company for the amount represented by them.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 547–553; Dec. Dig. ⊙═159.]

2. BANKS AND BANKING ⊙═167—INSOLVENCY—RIGHT TO SET-OFF.
   Where a bank has become indebted to a trust company for the amount of checks and drafts received for collection, and the trust company was also indebted to the bank for similar items, the bank can, after the insolvency of the latter, set off its debt to the trust company against the debt of the trust company to it.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 579–582; Dec. Dig. ⊙═167.]

3. BANKS AND BANKING ⊙═167—INSOLVENCY—RIGHT OF SET-OFF—PAYMENT BY CHECK.
   Such right of set-off is not lost by the sending of a check for the amount of the indebtedness, which was not received before the state superintendent of banks had taken possession of the trust company, and which was collected by him through another bank, since the superintendent represented, not only the trust company, but its creditors, including the bank, and was bound to protect its rights.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 579–582; Dec. Dig. ⊙═167.]

4. BANKS AND BANKING ⊛⇒167—INSOLVENCY—RIGHT OF SET-OFF—PAYMENT
BY CHECK.

    The right to set off a debt owing to an insolvent trust company against
a claim by it is lost, where a check for the debt was sent to and received
by the trust company before its assets were taken possession of by the
superintendent of banks.

    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 579–
582; Dec. Dig. ⊛⇒167.]

    Dowling, J., dissenting.

Appeal from Special Term, New York County.

Action by the German National Bank of Cincinnati, Ohio, against
the Carnegie Trust Company and another. Judgment for plaintiff, and
defendants appeal. Affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, DOWLING,
SMITH, and DAVIS, JJ.

Joseph A. Kellogg, of Glens Falls, for appellants.
Joseph M. Hartfield, of New York City, for respondent.

DAVIS, J.  [1] The plaintiff and the Carnegie Trust Company
had a reciprocal arrangement whereby each made collections of checks
and drafts for the other; the plaintiff in Cincinnati and its vicinity,
and the Carnegie Trust Company in New York and vicinity. The
correspondence between the plaintiff and the Trust Company, as well
as the testimony of the vice president of the Trust Company, shows
that the plaintiff was required to transmit daily to the Trust Company
the amount of the items sent to it by the Trust Company for collec-
tion, irrespective of whether they had been collected, and the court
below found that "upon the receipt of the checks and drafts from the
Carnegie Trust Company the plaintiff became indebted to the Carnegie
Trust Company for the sum represented by said checks and drafts."
This finding is fully justified. The evidence shows that items trans-
mitted by the Trust Company to the plaintiff had been deposited by
the Trust Company's customers in their respective accounts, not for
collection merely, but for credit. The Carnegie Trust Company thus
became the owner of those checks and drafts. Met. Nat. Bank v.
Loyd, 90 N. Y. 530; Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537,
52 Am. Rep. 9; Jaffe v. Weld, 155 App. Div. 110, 139 N. Y. Supp.
1101, affirmed in 208 N. Y. 593, 102 N. E. 1104; Lyons v. Un. Ex.
Nat. Bank, 150 App. Div. 493, 135 N. Y. Supp. 121. And when the
plaintiff received the checks and drafts, and before collecting them,
sent its check daily to the Trust Company for the amount of the
checks, it became the owner of the checks. It was quite well under-
stood between the plaintiff and the Trust Company that the proceeds
of these checks would be mingled with the general funds of the plain-
tiff. If that is so, then under the special arrangement made between
the parties the plaintiff became a debtor to the Trust Company to the
amount of the checks. Morse on Banks and Banking, § 248; N. B.
& D. Bank v. Hubbell, 117 N. Y. 384, 22 N. E. 1031, 7 L. R. A. 852,
15 Am. St. Rep. 515; People v. City Bank of Rochester, 93 N. Y. 582.
    On January 3, 1911, under the arrangement referred to above, the

Trust Company sent to the plaintiff in Cincinnati for collection checks and drafts amounting to $2,955.40. Immediately upon receipt of these items, and on January 5, 1911, the plaintiff mailed to the Trust Company its check for $2,953.92, the amount of the remitted checks less commissions. The check was received at the Trust Company's office on January 7, 1911, after the superintendent of banks had taken possession of the Trust Company. The superintendent took possession on January 7, 1911, and finding this check in the mail immediately caused it to be certified by the First National Bank. After suit brought by the superintendent of banking against the First National Bank on its certification the amount of the check was paid to the superintendent of banks and the plaintiff thereafter reimbursed the First National Bank. On January 7, 1911, the Trust Company owed the plaintiff $11,900.16, and the plaintiff owed the Trust Company $2,953.-92, the amount of the checks and drafts remitted by the Trust Company for collection, thus leaving a balance of indebtedness of $8,946.24 in favor of the plaintiff against the Trust Company.

[2] The question raised here is whether the plaintiff bank, under the peculiar circumstances of this case has preserved its right to discharge its debt to the Trust Company by the application of the principle of equitable set-off, and whether it can recover from the superintendent of banks the amount of the check mailed by the plaintiff on January 5, 1911, and received by the superintendent of banks on January 7, 1911. The Special Term decided that the plaintiff was entitled to set-off against the sum due the Trust Company the amount of the indebtedness of the Trust Company to the plaintiff and rendered a judgment impressing a trust upon the proceeds of the plaintiff's check in the hands of the superintendent of banks and directed the said superintendent to pay that amount to the plaintiff.

The appellants contend that, if the plaintiff bank ever had a right of offset, it never exercised the right, and in fact lost it by forwarding its check on January 5, 1911, to the Trust Company in payment of its indebtedness, and by the certification of the check. There is no doubt that had the plaintiff not mailed the check in question, its right of equitable set-off would be clear, and this being an instance of mutual debts, the plaintiff would have the right to discharge its debt to the Trust Company by offsetting to that extent the Trust Company's debt to the plaintiff. As was said in the case of Hughitt v. Hayes, 136 N. Y. 163, 32 N. E. 706:

"* * * Only the balance, in case of mutual debts, is the real sum owing by or to the insolvent." Curtis v. Davidson, 215 N. Y. 395, 109 N. E. 481.

[3] Did the mailing of the check by plaintiff, its receipt by the superintendent of banks, and its subsequent certification and payment, destroy the right of set-off existing before the check was mailed? We think not, and for the following reasons:

When the plaintiff bank forwarded the check on January 5, 1911, it was in payment of a debt due from it to the Trust Company. At that time it had no knowledge of the insolvency of the Trust Company, and the superintendent of banks had not yet taken possession of its business, nor was its insolvent condition generally known.

When the check reached the offices of the Trust Company on January 7, 1911, the superintendent had taken control of its affairs. Although the insolvency of the corporation was not legally asserted until the morning of January 7, 1911, it probably had been insolvent for several weeks before that date. The check was found that morning by the superintendent of banks inclosed in a letter addressed to the Trust Company. The check was made payable to the Trust Company and addressed to the Trust Company, not to the superintendent of banks. Immediately upon finding the check in the mail the superintendent caused the check to be certified by the First National Bank of New York.

[4] Of course, if plaintiff's check had been received by the Trust Company itself and had gone into the Trust Company's assets, there would be no question of offset raised. The check would have discharged the indebtedness. But here it was received by the superintendent, representing not alone the Trust Company, but the plaintiff as well, and he is bound to respect and protect the rights of the plaintiff as they existed at the moment he took charge of the Trust Company. Those rights became fixed by his act of taking possession, and nothing took place thereafter to change the relation of the parties to each other. At this time there were existing mutual debts between the parties. People ex rel. Attorney General v. Security Life Ins. & Annuity Co., 79 N. Y. 267, 271; People ex rel. Attorney General v. Security Life Ins. Co., 71 N. Y. 222; Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059; People v. A. L. & T. Co., 70 App. Div. 579, 75 N. Y. Supp. 563; Van Dyke v. McQuade, 85 N. Y. 616.

The plaintiff had mailed the check in ignorance of the insolvency of the Trust Company and before the superintendent took charge. Presumably it would not have been mailed, had plaintiff known of the insolvency; and we can assume that under the circumstances it would not have sent the check to the superintendent, but would have rested upon its right of offset in a future adjustment of its indebtedness to the Trust Company. The superintendent holds the proceeds of this check solely because of the plaintiff's ignorance of the Trust Company's condition, and we think that it would be unfair and inequitable to allow the superintendent to treat this check as a payment of plaintiff's debt to the Trust Company, and thus require the plaintiff to pay its debt in full while permitting the Trust Company to pay only in part.

Our conclusion is that the plaintiff has not lost its right of set-off, and that, as the superintendent collected the amount of the check and now holds the proceeds, those proceeds are impressed with a trust in favor of the plaintiff and should be paid to the plaintiff. Nor does this disposition of the case result in giving the plaintiff an unlawful preference over other creditors of the Trust Company, since it gives it no greater claim against the assets of the company than it had before it mailed the check. The money adjudged to be returned is really the property of the plaintiff.

The decision in the case of Carnegie Trust Company v. First National Bank, 213 N. Y. 301, 107 N. E. 693, is not in conflict with

these views. In that action the Carnegie Trust Company recovered the amount of this same check from the First National Bank on its contract of certification. The defense in that action claimed that the right of set-off belonging to the Cincinnati bank should prevent a recovery on the certification, arguing that it had the effect of defeating the plaintiff's title to the check. The court refused to adopt this view, and held that:

"The plaintiff, after receiving the defendants' certification, had the legal title to a chose in action, and even though some equity remained in the bank in Cincinnati, the legal title was not divested."

That case decided nothing more than that a right of set-off existing in the Cincinnati bank could not avail as a defense to the First National Bank in an action upon its certification. As was said by Mr. Justice Laughlin in the same case in his dissenting opinion (156 App. Div. 712, 716, 141 N. Y. Supp. 745, 748):

"The German National Bank of Cincinnati is not a party to this action, and therefore no question with respect to its set-off rights, or in other words its right to have the Carnegie Trust Company's liability to it applied in payment of the check, is presented for decision."

And the Court of Appeals, referring to the Cincinnati bank, said in the course of its opinion:

"We think that whatever right it has must be determined on the distribution of the plaintiff's assets, and is not available to this defendant as a defense to the acceptance. We find no authority for the proposition that a bank may resist the enforcement of its contract of certification in order to make a set-off available to its depositor."

Indeed, the court refused to decide the question of the reciprocal rights of the Trust Company and the Cincinnati bank in the following language, found at page 306 of 213 N. Y., at page 694 of 107 N. E.:

"Whether any form of remedy is available to the bank in Cincinnati to repair the consequences of its mistake is, however, a question that we need not now determine."

The judgment appealed from is affirmed, with costs.

CLARKE, P. J., and McLAUGHLIN and SMITH, JJ., concur. DOWLING, J., dissents, on the authority of Carnegie Trust Co. v. First National Bank, 213 N. Y. 301, 107 N. E. 693.