The Employers' Liability Assurance Corporation, Ltd., of London, England, Appellant, v. The Hudson River Trust Company, Respondent.*

Herbert Hall, as Receiver of The Germantown National Bank, Appellant, v. The Hudson River Trust Company, Respondent.*

(Consolidated Action.)

Third Department, March 3, 1937.

*Ainsworth & Sullivan* [*Charles B. Sullivan* of counsel], for the appellant The Employers' Liability Assurance Corporation, Ltd., of London, England.

*Gibboney & O'Brien* [*Stuart G. Gibboney* of counsel], for the appellant Herbert Hall, as receiver of The Germantown National Bank.

*John V. Whitbeck, Jr.* [*Robert E. Whalen* of counsel], for the respondent.

RHODES, J. The question for determination is whether the defendant in the transactions hereafter recounted was chargeable with knowledge that certain checks drawn by the Columbia county treasurer on county funds and deposited with the defendant by him in his personal account were being misappropriated and converted by him.

The undisputed essential facts are brief; they are set out at length in the opinion of the court below reported in 160 Miscellaneous Reports, 521.

Clyde H. DeWitt was county treasurer of Columbia county from January 1, 1928, to December 31, 1930, and was vice-president of the Germantown National Bank (hereinafter referred to as the bank), which was designated as a depository of county funds. The plaintiff, The Employers' Liability Assurance Corporation, Ltd., of London, England, hereinafter designated as surety, became the surety upon the official bond of the county treasurer. Moneys of the county were deposited by DeWitt with the bank in various accounts, one of which was known as the general fund account. Between July 7, 1928, and October 20, 1930, DeWitt wrongfully withdrew $87,000 from said general fund account and converted the same to his own use. A part of his said defalcation consisted of eleven checks drawn by him on said general fund, five of said checks being payable to cash, the remainder being payable to DeWitt, said checks ranging in amounts from $1,000 to $5,000, and aggregating $30,000. These were deposited by him with the defendant trust company in a personal account which on April 27, 1929, he had opened by the deposit of a cashier's check of the bank signed by its cashier and payable to the order of DeWitt for the sum of $3,601.99. The first of the eleven checks in question was deposited with the trust company October 7, 1929; the last one was thus deposited October 3, 1930, and in almost every instance the amounts deposited were withdrawn on the same day or within a space of two or three days before the checks had cleared and been paid by the bank upon which they were drawn.

The checks drawn by DeWitt on the bank were cleared usually within two or three days and the checks drawn by DeWitt on the trust company likewise were presented to the trust company for payment in the course of clearance within two or three days.

It does not appear to whom the checks were payable which were drawn by DeWitt on his said personal account in the trust company.

With the exception of said deposits there was in said account down to June 4, 1930, the sum of $45.26, and thereafter the sum of $25.26. DeWitt also had on deposit with the trust company, court and trust funds from December 31, 1927, to December 30,

1929, which had been deposited pursuant to court order and for which a separate pass book had been issued for each account. Prior to the opening of the personal checking account above referred to he had not for several years carried a personal checking account in the trust company.

He had a separate loan account with the trust company which was started September 15, 1928, in the amount of $15,225, on which there was outstanding at the end of 1930 the sum of $11,850. This was evidenced by a note and secured by shares of bank stock and a mortgage on DeWitt's house, such collateral amounting to more than the amount due from him on his said note, but being subject by the terms of the pledge to overdrafts and any other liability.

During all of the time in question the trust company knew that DeWitt was vice-president of said bank and that said bank was the duly designated official depository for all moneys of the county received by said treasurer.

The foregoing are substantially the only essential facts as to which the trust company is shown to have had knowledge.

After the defalcations were discovered the surety reimbursed the county therefor in the sum of $23,914.86, and on September 20, 1932, it recovered a judgment against the receiver of said bank, now in liquidation, for $25,021.13, and on account of said judgment said surety has received various *pro rata* payments, reducing said judgment to the sum of $10,508.88 with interest. The said surety company now seeks by subrogation in place of the county to recover said sum of $10,508.88 with interest, because of the amount which the surety was compelled to pay to the county by reason of the defalcations of DeWitt.

The plaintiff Hall, as receiver of said bank, hereinafter referred to as the receiver, seeks to recover from the trust company the amount of said eleven checks which it claims DeWitt induced the bank to honor by false representations of which the trust company had due knowledge and upon which the bank relied.

There is no proof that the trust company had actual knowledge that the moneys in question were being misappropriated and converted, but it is the claim of each plaintiff that the trust company was chargeable with knowledge thereof, and that it thereby aided and abetted DeWitt in such diversions and is, therefore, liable therefor.

The trust company was bound to know that the county moneys in the general fund account of the bank could be withdrawn by

the county treasurer only for the payment of claims ordered to be paid by the board of supervisors, or other lawful authority, or for salaries of county officers, or pursuant to the lawful direction of some court, and that if he withdrew or appropriated any money for any other purpose it constituted malfeasance in office and called for his removal from office. (County Law, § 147.) It also was bound to know that the county treasurer was required to deposit all moneys received by him as such treasurer in a duly designated bank of deposit upon interest. (County Law, § 144.)

The court below refused to find that when the said eleven checks were deposited by DeWitt in his personal account with the trust company it knew or was upon notice that county moneys were thereby being diverted to the personal account of DeWitt. It is assumed that this refusal to find was upon the theory that such acts did not constitute notice that a misappropriation was intended or being executed by DeWitt for the decision expressly finds that none of said misappropriations was committed with notice on the part of the trust company that such misappropriation was intended or was being executed by DeWitt. That is the only theory upon which the court could refuse to find that the trust company was upon notice that county moneys were being diverted by DeWitt to his personal account, because each check upon its face disclosed that county moneys were being withdrawn by DeWitt from the proper depository and placed in his private account.

The court also refused to find that the trust company was upon notice that county moneys were being diverted by DeWitt to his personal use in connection with said checks; and this refusal to find presents the heart of the controversy before us.

Were the forms (of the series) of checks and the deposits and withdrawals sufficient warning to require the trust company to make investigation? If not, then the judgment below was properly rendered. If the facts known to it put the trust company upon inquiry then it was bound by the information which it could have obtained if an inquiry on its part had been pushed until the truth had been ascertained. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106.)

The question of constructive notice such as is here presented most frequently arises in three types of cases. One type relates to the dealings of a bank with trustees and representatives of estates, such as *Bischoff* v. *Yorkville Bank* (*supra*); *Clarke* v. *Public National Bank & Trust Co.* (259 N. Y. 285); *Whiting* v. *Hudson Trust Co.* (234 id. 394); *Manufacturers Trust Co.* v. *U. S. Mortgage & Trust Co.* (244 id. 550); *Newton* v. *Livingston County Trust Co.* (231 App. Div. 355).

Another type involves the dealings of a bank with public officers such as the cases of *Town of Eastchester* v. *Mount Vernon Trust Co.* (173 App. Div. 482); *Mayor, etc., of New York* v. *Sands* (105 N. Y. 210); *Fidelity & Casualty Co.* v. *Farmers National Bank* (249 App. Div. 348); *Gilliland* v. *Lincoln-Alliance Bank & Trust Co.* (239 id. 68; affd., 264 N. Y. 517).

The third type of cases relates to the dealings of a bank with the officers or agents of private corporations such as: *Reif* v. *Equitable Life Assur. Soc.* (268 N. Y. 269); *Aneless Corp.* v. *Woodward* (262 id. 326); *Wagner Trading Co.* v. *B. P. Nat. Bank* (228 id. 37); *Weissman* v. *Banque De Bruxelles* (254 id. 488); *Havana Central R. R. Co.* v. *Knickerbocker Trust Co.* (198 id. 422); *Mutual Trust Co.* v. *Merchants Nat. Bank* (236 id. 478); *Sheldon Slate Co.* v. *Union Nat. Bank of Troy* (270 id. 569); *Niagara Woolen Co.* v. *Pacific Bank* (141 App. Div. 265); *Ward* v. *City Trust Co.* (192 N. Y. 61); *Wilson* v. *M. E. R. Co.* (120 id. 145); *Harr* v. *Wells-Newton Nat. Corp.* (269 id. 531).

In the cases relating to executors and trustees above cited, the rule is established that such trustee or representative may deposit trust funds in his personal account without being guilty of conversion, and that a bank dealing with him is not chargeable thereby with notice of his misappropriation, the reason being that under the statutes and the law applicable it is a fact known to all and upon which all may rely, in the absence of other information, that the title to the trust funds is in the representative and he possesses full control and disposition of them for the purposes of administration.

In the case of an officer or agent of a private corporation dealing with its funds the authority of such officer or agent is not known to all but depends upon the authority conferred upon him by the corporation which he represents. In such class of cases a bank knowingly receiving corporate funds for deposit in the individual account of such officer or agent is held to be under the duty of making inquiry to ascertain the extent of his authority in the transaction.

In the type of cases relating to public officials the statutory limitation upon the authority of the official to deal with public funds is presumed to be known by all, and a bank knowingly receiving funds from a public official under circumstances contrary to the statute is chargeable with notice of the violation and put upon inquiry to ascertain the truth.

In *Fidelity & Deposit Co.* v. *Queens County Trust Co.* (226 N. Y. 225) a trustee in bankruptcy having deposited trust funds with a bank withdrew them contrary to the provisions of General Order 29

of the United States Supreme Court promulgated pursuant to section 30 of the Bankruptcy Act, and converted the money thus withdrawn. The bank was held chargeable with knowledge of the General Order and with the provisions of the Bankruptcy Act and that the moneys were trust moneys; and it was declared that the bank was required to make inquiry as to the authority of the trustee in withdrawing the funds; that the investigation would have revealed that the checks were not drawn in conformity with said General Order in Bankruptcy. The court said: "In case a copy of the general order twenty-nine had been furnished to the defendant, or the defendant had known or ought to have known of its existence, prior to the payment of the checks by which the misappropriation was effected, the payment of the nine checks would have made it liable for the diversion of the funds effected through them. The checks then would have been as to it, as they in fact were, incomplete and improperly drawn."

The case last cited points the way to the decision in this case. Here the defendant trust company was chargeable with knowledge that the county treasurer was withdrawing county funds from the designated depository and depositing them in his own name in his personal account with defendant. Defendant knew that the county treasurer could only withdraw these moneys from the designated depository for claims ordered to be paid by the board of supervisors or other lawful authority or for salaries of county officers. It seems clear that the facts would have indicated to a reasonably prudent person that these checks, payable to the order of DeWitt or cash, were not in payment of his salary or the salary of other county officers, and that such checks were not being issued in payment of claims which had been ordered paid by the board of supervisors or other lawful authority. If these checks were in payment of authorized claims they would naturally have been made payable to and delivered to the owner thereof. The form of the checks in connection with the knowledge with which the trust company was chargeable certainly indicated that the statute was not being complied with as to the withdrawal of the funds from the lawful designated depository and indicated that their application and use by the county treasurer was contrary to law. The facts were thus sufficient to put the defendant on notice and to charge it with the duty to investigate, and thus it was chargeable with knowledge of the truth.

For the respondent it is asserted that the defendant was relieved of the duty of making any further inquiry when the checks drawn on the bank and deposited with the trust company had cleared and been paid by the bank. (Citing *Havana Central R. R. Co.*

v. *Knickerbocker Trust Co., supra; First National Bank* v. *Hudson*, 166 App. Div. 51; modfd., 222 N. Y. 556.)

*Havana Central R. R. Co.* v. *Knickerbocker Trust Co. (supra)* was the case of a private corporation whose treasurer drew checks of the corporation to his own order and wrongfully deposited them to his own account.

*First National Bank* v. *Hudson (supra)* was the case of a bank seeking to recover from a firm of stockbrokers moneys and proceeds of stock stolen by the bank cashier and by him delivered to the stockbrokers in connection with his personal speculations.

The situation existing in those cases was manifestly different from the case here, where the limitations upon the authority of the county treasurer are contained in public statutes, knowledge of the provisions of which are imputable equally to all. Ultimate payment of the checks by the depository bank was not conclusive as to their validity, but the defendant could rely upon such payment only " within reasonable limits." (*Whiting* v. *Hudson Trust Co., supra.*)

Here the authority of the county treasurer necessarily rests upon the statutes or authorization by the board of supervisors or other proper authority. A violation of the statutes was as apparent to the defendant as to the depository bank, and it cannot be said that the defendant would be permitted to rely upon the construction placed upon statutes by the depository bank. A conclusion of law which might be arrived at by the depository bank would not exonerate the defendant from pursuing the inquiry until the truth had been ascertained. The warning conveyed by the checks themselves in connection with the knowledge chargeable to the defendant was sufficient to overcome the usual presumption as to the regularity of acts of public officials and the presumption of innocence rather than guilty violation of the law.

If the governing rules of law have been correctly applied herein, then the liability of the defendant is established.

The plaintiffs claim that there is another ground of liability; that the defendant is liable because it benefited through the transfer of the public funds in question to DeWitt's personal account. The principal argument in support of this point is that when each of the checks was deposited by DeWitt with defendant, the defendant extended conditional credit to DeWitt pending the payment to defendant of the checks by the depository bank on which they were drawn; that when each of said checks was deposited with the defendant and until payment thereof was received, DeWitt thereby became the debtor of the defendant and remained such debtor until the amount of the check was cleared and collected

from the depository bank. This contention is not tenable. When a bank accepts checks for deposit, without restriction, it becomes the owner of the checks and the debtor to the depositor therefor. (*Metropolitan Nat. Bank* v. *Loyd*, 90 N. Y. 530; *Cragie* v. *Hadley*, 99 id. 131; *Lyons* v. *Union Exchange Nat. Bank*, 150 App. Div. 493; *Freeport Bank* v. *Viemeister*, 227 id. 457.)

The premise assumed by plaintiffs is, therefore, incorrect and the conclusion drawn therefrom falls.

The plaintiffs argue further that during the time the moneys for these checks were on deposit with defendant its position as to DeWitt's loan and collateral account was strengthened. This claim also does not afford sufficient support for rendering the defendant liable. The liability of the defendant rests upon the fact that it was chargeable with knowledge sufficient to put it upon inquiry and was, therefore, chargeable with knowledge of the fact that DeWitt was misappropriating and converting county funds.

Having concluded that the defendant is liable, there remains a question whether either or both of the plaintiffs may recover damages upon such liability.

The plaintiff surety stands by subrogation in the place of the county. As between the plaintiff surety and the plaintiff receiver, the surety has recovered judgment against the receiver, which judgment has established that the bank of the receiver was chargeable with knowledge of the defalcations. As between the two plaintiffs, therefore, the surety is the one which should be permitted to recover here. Counsel for the receiver claims that even so, the receiver should have judgment for the difference between the amount of the claim of the surety and the balance of the $30,000 wrongfully converted by DeWitt and deposited with the bank. This contention of the receiver ignores the fact that the bank and the trust company were each chargeable with knowledge that the funds in question were being stolen by DeWitt. Under these circumstances the bank, as one of the negligent parties, should not be permitted to recover against the trust company, also a negligent party.

The judgment should, therefore, be reversed as to the plaintiff surety, on the law and the facts, with costs, and judgment granted to it for the amount of its claim and interest, with costs. The judgment, in so far as it dismisses the claim of the plaintiff receiver, should be affirmed, with costs to the defendant against the receiver.

HILL, P. J., and HEFFERNAN, J., concur; CRAPSER, J., dissents, and votes to affirm; MCNAMEE, J., not voting.

Judgment reversed as to plaintiff surety on the law and facts, with costs, and judgment granted to it for the amount of its claim,

with interest and costs; judgment, in so far as it dismisses the claim of the plaintiff receiver, affirmed, with costs to the defendant against the receiver.

The court reverses findings of fact Nos. 14, 15, 18 and 19 contained in the decision and disapproves of the first and third conclusions of law therein.

The court finds that when each of the checks in question was accepted by defendant for deposit to DeWitt's personal account, defendant was upon notice that county moneys were thereby being diverted to the personal account of DeWitt and to his personal use.

The court modifies and corrects the last sentence of finding No. 16 of plaintiff's request to find, so that said sentence shall read: " At the time of each such withdrawal the account consisted solely of moneys referred to in finding 15 and the credits referred to in finding 14." [Decision was amended and modified on March 19, 1937, as to certain findings. See 250 App. Div. 812.]