(79 App. Div. 409.)

CULLINAN, State Com'r of Excise, v. UNION SURETY & GUARANTY CO.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1903.)

1. BOND FOR PAYMENT OF DEPOSIT—CHECKS—CERTIFICATION.
Certification of checks at the instance of the drawer, and the transfer by the bank, without the knowledge or acquiescence of the drawer, to the account of each payee of the amount represented by his check, is not a transfer to the credit of each payee of the amount of his check, thus releasing the drawer, and consequently one who gave him a bond conditioned that the bank would promptly pay his deposit at any and all times on legal demand therefor; though, when the payees in due season presented their checks, payment was refused, the bank having failed.

2. SAME—CANCELLATION OF CHECK—ASSIGNMENT OF INTEREST.
One who has given a depositor in a bank a bond for payment of the deposit on demand is entitled, on payment of judgment on the bond, to a cancellation of checks given by the depositor and not paid, and to an assignment of his interest in the fund in the hands of the receiver of the bank.
Williams, J., dissenting.

Appeal from special term, Oswego county.

Action by Patrick W. Cullinan, state commissioner of excise, against the Union Surety & Guaranty Company. From a judgment for plaintiff, defendant appeals. Modified.

Argued before ADAMS, P. J., and SPRING, WILLIAMS, HIS-COCK, and NASH, JJ.

Wilson B. Brice, for appellant.
Sheldon B. Mead, for respondent.

SPRING, J. Plaintiff is the state commissioner of excise, and one of his depositaries was the City National Bank of Buffalo. The defendant, pursuant to section 13 of the liquor tax law (2 Heyd. Gen. Laws [2d Ed.] c. 29), became a surety for the bank, and the bond which it gave to the plaintiff contained this condition:

"Now, therefore, the condition of this obligation is such that, if the above-bounden the City National Bank of Buffalo shall and will safely keep all such moneys that may be so deposited in or held by said bank on deposit as aforesaid, and shall and will promptly pay the same over at any and all times upon legal demand therefor, then this obligation to be void; otherwise to remain in full force and effect."

The special deputy commissioner of excise for the county of Erie during the year 1901 collected for the plaintiff and deposited in said bank the sum of $5,578.08. Between the 20th day of May and the 10th day of July of that year said special deputy commissioner gave seven checks, payable to the order, respectively, of supervisors and other officials to whom said money was properly payable, the aggregate amount of said checks being $3,795.53. These seven checks, as they were issued, were certified by the bank. There were two other uncertified checks issued, aggregating $1,782.55. All of these checks were delivered to their respective payees, and were presented to the depositary, but payment was refused, as the bank in the meantime had failed, and its assets were in the possession of a receiver. There is no question raised that the drawer unduly delayed the delivery of any of these checks, or that the payees were tardy in their presentation. On the other hand, it is stipulated that the checks were duly indorsed and presented, and payment thereon duly demanded. At the time the checks were certified the officers of the bank, apparently without the knowledge or acquiescence either of any of the payees or the drawer, transferred to the account of each payee the amount represented by his check. The checks have never been paid, and this action is brought by the plaintiff to recover upon the bond of the surety company. The defendant concedes that it is liable for the amount represented by the uncertified checks, but contends that the fact that the other checks were certified was a transfer to the credit of each payee of the amount of his check, releasing the drawer, and consequently the surety company. We think this position is untenable. The effect of the certifying of these checks was that the bank guarantied the genuineness of the signature of the drawer, that it had in its custody sufficient funds to meet them, and agreed that the money should not be withdrawn to the prejudice of the holder of the check. The payee of a certified check, where the certification is procured by the drawer, is not a party to the

transaction, and is not bound by it. The learned counsel for the appellant relies upon Bank v. Leach, 52 N. Y. 350, 11 Am. Rep. 708. In that case the check was procured to be certified by the holder, and not by the drawer, and it was held that this act on the part of the holder discharged the drawer, and operated as a payment between these two. The court, however, is particular to say that "this would not discharge the drawer of a check who himself procured it to be certified, and then put it in circulation." In Selover, Neg. Inst. Law, § 129, the rule is thus stated:

"Where the drawer of a check procures its certification by the bank, he still remains liable; but where the holder obtains this certification the drawer and all prior indorsers are discharged from liability."

To the same effect is Norton, Bills & N. (2d Ed.) p. 400.

Crawford, Ann. Neg. Inst. Law (2d Ed.) notes under section 324, says:

"But where the check is certified when. delivered it does not constitute payment any more than an uncertified check; and if it is presented promptly, and dishonored, the loss must fall upon the drawer."

The reason for the rule would seem to be that, where the drawer procures the certification himself, the bank knows that the check has not been put into circulation, and the act done is for the benefit and at the instance of the drawer. The payee of the check has taken no part in the .certification, and it is done without his knowledge. On the other hand, where the holder of a check presents it to the bank, procures its certification, he is the one that secures the transfer of the fund to his own account, and consequently the drawer is discharged. If the rule contended for by the appellant is correct, then it would be unsafe for one to accept a certified check unless he well knew the bank was solvent. The certificate to a check, instead of adding to might lessen its value as commercial paper. The negotiable instruments law (section 324), is as follows:

"Where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon."

This limits the discharge of the drawer to the act of the holder in procuring the certificate.

The payees of the check did not know of the transfer of the money to their accounts, and consequently never assented thereto. They presented the checks for the money in the usual way, and failed to get it. They may have desired payment on the checks, instead of having the money placed to their credit without any knowledge or any action on their part. If the position taken by the surety company is correct, the bare acceptance of the check operated as a payment to the extent of the sums which they purported to represent. We find no authority sustaining any such principle.

The condition of the bond given by the defendant was that it "will promptly pay the same over at any and all times upon legal demand therefor." This condition of the bond has not been complied with, for the bank refused to pay the checks drawn on this fund by the plaintiff. In cases of this kind, where bonds are given for the pro-

tection of a state department, the surety company will be held to a rigid construction of its agreement.

The facts in this case were stipulated, and submitted to the trial judge without a jury, and a formal decision was rendered by him separately stating the findings of fact and conclusions of law. It appears from these stipulated facts that since the City National Bank has been in the hands of a receiver dividends to the amount of 50 per cent. have been made, and those represented by the seven checks in question are still retained by the receiver, and no payment has been made on the checks by reason thereof. It does not appear whether or not the checks have ever been returned to the plaintiff, or been canceled. The effect of the judgment and its payment by the surety company would be to subrogate it in place of the plaintiff as to this fund; but even that might not be sufficient to protect the appellant.

The judgment should be modified by requiring the plaintiff to produce the checks for cancellation, or transfer to the appellant and formally assign his interest in the fund in the hands of the receiver, including his interest in any subsequent dividends which may be declared. This cancellation and assignment should be made simultaneously with the payment of the judgment. The judgment, as so modified, should be affirmed, without costs of this appeal to either party. The form of the order may be settled before Mr. Justice SPRING on two days' notice, unless agreed upon by the parties.

Judgment modified accordingly, and, as so modified, affirmed, without costs of this appeal to either party. All concur, except WILLIAMS, J., who dissents.