CENTRAL HANOVER BANK AND TRUST COMPANY, etc., Plaintiff, v. THE MIRROR, etc., and Another, Defendants.

Supreme Court, New York County, March 22, 1935.

*Eppstein & Hirschfield*, for the plaintiff.

*O'Brien, Driscoll & Raftery*, for the defendants.

COLLINS, J. This motion by the plaintiff for summary judgment presents the uncommon question as to who must bear the loss

occasioned by the non-payment of certified checks, where the certification was not procured by the holder, within the meaning of section 324 of the Negotiable Instruments Law.

In 1922 the defendant, The Mirror, leased from the plaintiff's predecessor the premises 574 Fifth avenue, for a term of approximately twenty-five years. The said lease contained the following pertinent provisions:

" The Lessor in consideration of the rents, covenants and conditions herein reserved and contained, on the part of the Lessee to be kept and performed has granted [here follows a description of the premises] yielding and paying therefor * * * to wit, at a yearly net rent or sum of [here follows the various net rental amounts for the period stated in the lease] and as part of the rent hereby reserved all taxes, water rates, etc.

" *First.* It is hereby mutually covenanted and agreed that the said Lessee shall and will yearly and every year during the said term hereby granted well and truly pay or cause to be paid unto the said Lessor, his heirs, executors or administrators, the annual rent hereby reserved and all such other sum or sums that may become due and payable as additional rent herein, and all sums which may become payable on account of the Lessee's default in the observance of any of the covenants herein contained on its part to be kept and performed at the times and in the manner limited and prescribed herein for the payment thereof.

" *Second.* It is further mutually covenanted and agreed that the Lessee shall and will during the term aforesaid at its own proper cost and expense bear, pay and discharge all such taxes, etc. * * * as shall during the term hereby demised be laid, levied, assessed or imposed upon * * * said premises * * * and the Lessee will from time to time upon reasonable request exhibit the vouchers for said payments to the Lessor, and in default of the payment of any such taxes, etc. * * * the Lessor may thereupon pay the same and the amount so paid with interest thereon shall and may be added as additional rent to the next installment of rent becoming due on the 1st of the following month or to any subsequent installment of rent and shall for all purposes whatsoever be deemed to be rent due and payable on the said rent day or subsequent rent day as said Lessor may at his option elect."

The Mirror defaulted in the payment of the 1932 taxes amounting to $16,616. In January, 1933, the second defendant, Loft, Inc., having purchased a controlling interest in The Mirror, successfully negotiated with the landlord for a reduction of the rent as well as the term, and the lease was modified accordingly. As a part of the modification agreement, and in consideration thereof,

Loft guaranteed the faithful performance by The Mirror of the terms of the lease, as modified, in the following language:

"*Fifth.* Loft, Inc., hereby guarantees the faithful performance by The Mirror of the terms and conditions of the said lease of May 20, 1922, as hereby modified, and does hereby guarantee the prompt payment by The Mirror of the rent and additional rents reserved and agreed to be paid by The Mirror in said lease as hereby modified."

It would seem that one of the conditions for the modification was the promise that the unpaid taxes be discharged.

When the modification was executed on February 23, 1933, two checks aggregating $16,616 were drawn by Loft upon its account in the Harriman National Bank and Trust Company, both payable to the city collector and delivered to the plaintiff's attorneys. These checks were to be transmitted by the plaintiff to the city collector in payment of the taxes. In the interim, however, penalty interest to February twenty-seventh, amounting to $669.21, had accrued. The plaintiff promptly wrote the attorneys for The Mirror concerning the shortage, requesting the additional $669.21 and advising that in the event the taxes were not paid by the twenty-seventh more interest at the rate of seven per cent would be imposed.

Between February 24 and March 1, 1933, the plaintiff, anticipating the receipt of the additional check from Loft, and in preparation for the delivery of the checks to the city collector, procured the Harriman Bank to certify Loft's two checks payable, as already observed, to the city collector.

On March first The Mirror sent the plaintiff its check on the Harriman Bank, but drawn to the order of the plaintiff, for $675.56 to cover the penalty interest. This amount was in excess of the $669.21 requested. The check was accompanied by a communication from the defendants' attorneys, which stated: " I understand that with this check you will pay the taxes and accrued interest for the last year and send us receipted bill. In the event that the checks now in your possession, amounting to $16,616, plus the present check for $675.56 is more than the amount required to be paid to the City of New York, you will return to us the excess."

However, instead of an excess, there developed a small deficiency, of about six dollars, which the plaintiff supplied. This six dollars, and the three checks, were delivered by the plaintiff to the city collector.

Came the bank holiday. The Harriman Bank never reopened. The checks were dishonored.

Who is to bear the loss?

The plaintiff asserts that the defendants' obligation to pay the taxes has not been performed. It maintains that in procuring certification of the checks and delivering them to the city collector, it acted merely as the defendants' agent or messenger.

The defendants, just as stoutly, contend that " when the landlord accepted the two checks of Loft, Inc., payable to the city collector and caused them to be certified, the plaintiff, for its own benefit, caused the Harriman National Bank and Trust Company to set aside out of the deposit of Loft, Inc., a separate fund and thereafter took the risk of the bank's insolvency to meet this obligation." It insists that " the certification of these checks by the plaintiff acted to discharge the defendant, The Mirror, from further liability for taxes for the year 1932." The defendant Loft maintains that, in any event, it cannot be held because its guaranty covered only future performance of the modified lease and was not retroactive so as to embrace the arrears that were outstanding when its guaranty was given.

The dispute is authentic. The solution is not entirely free from doubt. The difficulty is enhanced because one of two innocent persons must suffer.

Indubitably the certification of the checks removed the fund from the drawer's account and made it subject to the will and order of the payee. " The effect of certification is to deprive the drawer of the right to the funds on deposit with the drawee bank, necessary to meet the check." (*Lyons* v. *Union Exchange National Bank*, 150 App. Div. 493, 497.) " Where a check is certified by the bank on which it is drawn the certification is equivalent to an acceptance." (Neg. Inst. Law, § 323.)

The defendants argue that the certification by the plaintiff was for its own benefit and, therefore, was the equivalent of certification by the holder. They deny that the act of certification was as defendants' agent or for their benefit, but protest that the act was adverse to defendants.

Section 324 of the Negotiable Instruments Law provides:

" § 324. Effect where holder of check procures it to be certified. Where the holder of a check procures it to be accepted or certified the drawer and all indorsers are discharged from liability thereon."

Was the plaintiff's status that of a holder?

The answer resides in section 2. " 'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof."

The same section defines " Bearer " as " the person in possession of a bill or note which is payable to bearer."

Since the plaintiff was not the " payee or indorsee of " the instruments nor " in possession of " instruments " payable to bearer," a certification of the checks by it did not discharge " the drawer * * * from liability thereon," under section 324.

The interpretative cases sustain the view that only a certification by the holder operates to relieve the drawer. (*Cullinan* v. *Union Surety & Guaranty Co.*, 79 App. Div. 409.) Mere certification is not enough. The determinative factor is the position of the one procuring the certification.

In an Iowa case (*Parker* v. *Walsh*, 200 Iowa, 1086; 205 N. W. 853) it was held: " The fact the appellant had the check in his possession and presented it to the bank for the purpose of certification did not make him a holder of the check, in the sense of the Negotiable Instruments Act, or a transferee thereof."

And in construing this provision of the Uniform Negotiable Instruments Law, the Nebraska court, in *Gasper* v. *Security State Bank* (109 Neb. 495; 191 N. W. 654) held: " Where a check is certified at the instance of a person having no authority from anyone of these [maker, holder or payee] the certification will not constitute an acceptance so as to change the relation of the parties and work an assignment of the bank's funds."

This Department, in *Anglo-South American Bank, Ltd.*, v. *National City Bank of New York* (161 App. Div. 268), stated: " The effect of a certification of a check at the instance of the payee, or other holder thereof is to create a new contract between the *drawee* and the payee, or other holder, for the payment of the amount thereof, and the *drawer* is released from liability thereon * * *. I am of opinion that this rule is logically and necessarily confined to cases in which the check is certified at the instance of the payee or other holder thereof in due course * * *. The certification of the check in question was not made at the instance of the payee, or of any holder thereof in due course, but at the instance of * * * who had induced the drawing and issuance thereof by fraud, and he was not authorized to and did not represent the payee. The act of certification was not binding on the payee.

" * * * the case was, I think, no more favorable to defendant than if the plaintiff had procured the certification and did not thereafter deliver the check to the payee."

It appears to have been the custom between the landlord and tenant here that the tenant pay the taxes direct to the city collector. The present transaction would seem to be an exception. It would be logical to conclude, therefore, that in this instance the landlord was performing a service customarily performed by the tenant and that, consequently, the landlord acted as the agent or messenger of the tenant.

In *Davenport* v. *Palmer* (152 App. Div. 761) it is appositely said: " the certification of a check by the drawer prior to delivery, even although made at the request of the payee, does not release the drawer; and such is, I think, the proper rule. No case to the contrary has been cited or found. Certainly the reasons for releasing the drawer from liability when the check has been certified by the holder after delivery do·not exist in such a case. The purpose of requesting the drawer to have the check certified before delivery is generally that the bank may be made liable thereon as well as the drawer, thereby enabling the payee to more readily negotiate the check. A request by the payee for such a certification should not, therefore, be deemed an election to take the certified check in payment of the debt." (Reversed on other grounds, 211 N. Y. 596.)

Certainly, it was not the act of certification that caused these two checks to be dishonored. They would have been dishonored anyway. So that the plaintiff did not produce the result by procuring the certification. Payment of the taxes could not have been made sooner because the defendants had not placed sufficient funds in plaintiff's hands. The plaintiff acted with dispatch. Therefore, nothing the plaintiff did, or omitted to do, occasioned the loss or damaged the defendants.

In the *Lyons Case* (*supra*) the defendant who caused certification was held to be the holder. It presented the check for payment and was persuaded to accept certification instead. The facts are so dissimilar to those here that that case does not serve as a pattern for the decision here.

Since the lease obligates the tenant to pay the taxes, since it is undisputed that the taxes for 1932 were not paid, since the certification of the checks did not *per se* harm the defendants, and since such certification did not release the defendant-drawer, the conclusion must be attained that the defendants' liability to pay the taxes has not been discharged or released.

This conclusion is reinforced by the reason for the doctrine which relieves a drawer of liability when certification is procured.

Here, the plaintiff not being the payee or bearer, had no control over the fund; it could not have obtained the cash from the certifying bank had the plaintiff elected. Certification did not invest the plaintiff with more or greater right to the checks than it possessed before certification. The effect of the certification was that the bank undertook to pay. But the obligation by the bank did not release the drawer; the plaintiff received nothing additional to what it previously had.

Thus, the rationale for the principle which releases the drawer on certification, dictates that the present case is not comprehended

within section 324. Discharge of the drawer is excluded by the very definition of a holder. The defendants committed themselves to the payment of the taxes. Why they should be exempted from making the payment must be established by them. This they have not done. The law, and the reason which underlies it, hold the defendants liable.

I am not impressed by the argument of the defendant Loft that its guaranty functioned forwardly and not retroactively. The guaranty covered " the faithful performance by The Mirror of the terms and conditions of the said lease of May 20, 1922, as ' modified. Obviously the lease was not canceled; it was merely modified.

The Mirror failed to pay the taxes and it behooves Loft, under its guaranty, to do it. Such was the manifest intention. Payment of the taxes and the guaranty by Loft were factors which induced the plaintiff to reduce the rent and shorten the term. This conclusion is buttressed by the fact that the drawer of the checks was Loft and not The Mirror. The conduct of the parties is boldly etched and reinforces the plaintiff's claim that Loft, because of its superior financial position, undertook the obligation of seeing to it that payment be made of whatever was or became due under the lease.

Accordingly, the motion for summary judgment is granted against both defendants. The clerk is directed to enter judgment as demanded in the complaint. Fifteen days' stay.