MAX S. YUNI, Respondent, *v.* MAX HERSCOVITZ, Appellant.

First Department, January 16, 1942.

*Jacob R. Freund,* for the appellant.

*Irwin Isaacs,* for the respondent.

GLENNON, J. Plaintiff instituted this action to foreclose a mortgage on defendant's real property located in the county of Bronx. He claimed that the defendant failed to pay certain interest which was due on July 14, 1940. Defendant, in his answer,

denied that he failed to pay the interest and set up an affirmative defense of payment.

Plaintiff testified that he never received the interest payment, which became due on July 14, 1940, in the sum of forty-five dollars and, as a consequence, he elected to declare the principal sum due and unpaid. Defendant gave testimony, which was not disputed, that he mailed a certified check with a letter to the attorney for plaintiff in payment of the July fourteenth interest. Under date of August 23, 1940, plaintiff's attorney forwarded to defendant the following letter:

" Dear Sir:

" The certified check which you forwarded to me on or about the 14th day of July, 1940, I forwarded to my client, Max S. Yuni. He has this day informed me that he never received the check. It evidently went stray somewhere.

" Will you, therefore, kindly stop payment on said check in the bank and send me another one to take its place.

" Very truly yours,
" IRWIN ISAACS."

By letter bearing date August 30, 1940, the attorney for the plaintiff wrote to the defendant in part as follows:

" I have gotten in touch with your bank with respect to the lost certified check, and they inform me they will not issue another one unless you will file a bond with them.

" I have communicated with the National Surety Company, and they mailed me the enclosed application which you are to fill out, and upon the filing of the same with the surety company, they will issue a bond which you must file with the bank, and they will in turn issue another check to represent the lost one."

Thereafter, under date of November 19, 1940, the defendant forwarded the following letter to Mr. Isaacs:

" The cost of securing a Bond of Indemnity requested by my Bank I understand is $5.00, if you think I'm going to pay this $5.00 on a/c of your carelessness in losing my certified check — then your idea of law and justice is very much twisted.

" Send me check for $5.00 for this Bond & I will comply with Bond requirements for a re-issue of check for $45.00."

The record shows that after the bond and mortgage in suit were assigned to the plaintiff by a prior holder, plaintiff, in July, 1937, instituted an action to foreclose the mortgage. On August fifth of that year a stipulation was entered into between the parties whereby that action was settled and discontinued. Subsequently on February second of the following year, defendant mailed to Mr.

Isaacs the receipted tax bills. He did not pay the interest, which was due on January 14, 1938, however, until February 14, 1938. It was stipulated between the parties at the trial that all interest payments from February 14, 1938, up to and including the interest due on January 14, 1940, were by means of certified checks in the sum of forty-five dollars to the order of the plaintiff Max S. Yuni.

While the defendant, because of his inability to identify Mr. Isaacs' voice over the telephone, was precluded from testifying as to the circumstances leading up to the certification of the checks, still it is not disputed that, beginning with February 14, 1938, all payments of interest were by means of certified checks which were mailed to the plaintiff's attorney. The record establishes that the first time defendant met or became acquainted with plaintiff was upon the trial of the present action. It is fair to say that the plaintiff made his attorney his agent for the collection of the interest payments at least subsequent to the time when the original foreclosure action was settled and discontinued.

We believe that the retention of the certified check in payment of the July 14, 1940, interest by the attorney for the plaintiff, under the circumstances detailed in the record, was sufficient to establish the payment of the interest. Concededly the certified check was received by the attorney when due. Its loss, of which the defendant was apprised some five or six weeks later, was through no fault of his. If the plaintiff's attorney, upon receipt of the certified check, was not willing to accept it as payment of the interest, but required cash, then it was his duty, acting as the agent of plaintiff, to return the check to defendant. Since he did not do so, the plaintiff rather than the defendant should have paid the premium for the required bond, which would have resulted in the releasing of the fund which was appropriated to his credit at the defendant's bank.

It should be noted that the case of *Davenport* v. *Palmer* (152 App. Div. 761), from which the plaintiff has quoted at length in his brief, was reversed by the Court of Appeals (211 N. Y. 596) in the following *per curiam:*

" The reversal being upon questions of law only (Code Civil Procedure, section 1338), we are limited on this review to the consideration of the questions of law arising upon the findings of fact which there is any evidence to sustain. The Special Term found upon sufficient evidence that the plaintiff and his client, the mortgagee, accepted Mr. Dalton's check in payment, satisfaction and discharge of the bond and mortgage. That finding disposes of the case irrespective of the effect of the certification of the check or of the subsequent recovery by the plaintiff of a judgment upon it.

"The order of the Appellate Division should be reversed and the judgment of the Special Term affirmed, * * *."

While in the case we now have under review, the court at Special Term did not find that the defendant had paid the interest, still the evidence in the record quite conclusively establishes that payment of the interest actually was made. Of course, it seems unfortunate, in view of the amount in dispute, which was the sum of five dollars, the cost of the bond, that the plaintiff has seen fit to institute this action. Nevertheless, that is the situation with which we are confronted. If this judgment were permitted to stand the defendant would be deprived of his property. He offered to do what any fair-minded person would have done under the circumstances, to furnish the bond, provided the cost of securing it was paid by the plaintiff, who lost the certified check.

The situation here presented is analogous to that which is reported under the title of *Bevan* v. *Hill* (2 Camp. 381; 170 Eng. Reprint, 1191), which was decided February 3, 1810. The head note reads as follows: "A cheque given for stock sold is lost by the vendor in going home from the Stock Exchange. The purchaser is immediately informed of this fact, but refuses to pay without an indemnity. Four months after, the bankers on whom the cheque was drawn stop payment, with sufficient money to answer it of the drawer's in their hands. Held, that under these circumstances an action would not lie for the price of the stock." In that case Lord ELLENBOROUGH said in part: "It is certainly possible that this check may have got into the hands of a person who might maintain an action upon it. The very day it was lost it might have been passed for value to a *bona fide* holder without notice. I therefore think the defendant was entitled to an indemnity. He could not, without this, have safely withdrawn the money from Walpole and Co. before their bankruptcy. He then ceased to be liable upon the check; but the money was gone. * * *"

While one must realize that this action is not based upon the lost or mislaid certified check, still, since plaintiff, through his agent, received it when due, he should be deemed to have accepted it as payment. He may, in a different action, recover the face amount of the lost check by giving a written undertaking as provided for in section 333 of the Civil Practice Act.

For the reasons assigned the judgment should be reversed, with costs, and judgment directed to be entered in favor of defendant, with costs.

TOWNLEY and UNTERMYER, JJ., concur; MARTIN, P. J., and O'MALLEY, J., dissent and vote to affirm.

MARTIN, P. J. (dissenting). The giving of a check may be regarded as payment in the popular sense. In the strict legal sense, however, in the absence of an agreement to accept the same as payment, a check is not a discharge of a debt. (*Cromwell* v. *Lovett*, 1 N. Y. Super. Ct. [1 Hall] 56; *Hunter* v. *Wetsell*, 84 N .Y. 549; 48 C. J. 617; *Liberty National Bank* v. *Simpson*, 187 Okla. 274; 102 P. [2d] 844; *Cohen's Department Stores, Inc.*, v. *Siegel*, 60 Ga. App. 79; 2 S. E. [2d] 762.)

The check in the case at bar had been certified. Had it been certified at plaintiff's request the defendant's obligation to pay the interest would have been discharged. (Neg. Inst. Law, § 324.) Here the defendant procured the certification before the check was forwarded to plaintiff's attorney. The effect of that certification was that the bank guaranteed the genuineness of the signature of the drawer, that it had in its custody sufficient funds to meet the check, and the bank agreed that the money would not be withdrawn to the prejudice of the holder of the check. It was held in *Cullinan* v. *Union Surety & Guaranty Co.* (79 App. Div. 409) that the mere acceptance by the payee of a check certified by the procurement of the drawer is not a discharge of the drawer.

There is no evidence in the record before us of any agreement on the part of plaintiff to accept a check as payment of the defendant's debt. The difficulty here has been created by defendant's own act in having the check certified. There was no obligation on the part of plaintiff to furnish indemnity as an inducement for the issuance of another check, as plaintiff would be within his rights had he insisted upon payment of the interest in cash.

The judgment should be affirmed.

O'MALLEY, J., concurs.

Judgment reversed, with costs, and judgment directed in favor of the defendant, with costs. Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.