BLUE J FEEDS, INCORPORATED, A CORPORATION, APPELLANT, V. SCOTTSBLUFF NATIONAL BANK, A CORPORATION, APPELLEE.
54 N. W. 2d 404

Filed July 11, 1952.   No. 33185.

*Young, Williams & Holm,* and *James H. Anderson,* for appellant.

*Davis, Stubbs & Healey,* and *Richard D. Wilson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by Blue J Feeds, Incorporated, a corporation organized under the laws of Nebraska with its principal place of business at Gering, hereafter referred to as corporation, against Scottsbluff National Bank, a corporation organized under the laws of the United States with its principal place of business at Scottsbluff, hereafter referred to as bank, to recover from the bank on two causes of action the amount of corporate funds on deposit which Frank R. Warden, vice president and managing officer of the corporation, is alleged to have transferred without authority and unlawfully to the bank in payment of two personal notes to the bank, the payments being made on two separate occasions.

The pleadings, so far as necessary to a determination of this appeal, are, in substance, as follows:

The amended petition of the corporation alleges that Frank R. Warden was vice president of the corporation and Douglas R. Lovell, son-in-law of Warden, was an employee of the corporation; and that the corporation maintained at all times here involved a checking account with the bank in which it had deposited funds in excess of $5,020.83. It further alleges that on November 12, 1948, Warden and Lovell wrongfully and without authority withdrew and diverted from the funds so deposited $5,020.83 which Warden turned over to the bank in payment of his personal debt to the bank, which debt was represented by a personal note; that the bank knew the funds were the property of the corporation and that the note represented the personal debt of Warden; that the bank participated in and benefited by Warden's unlawful diversion of corporate funds; that the diversion

and payment was made by means of a check made November 12, 1948, drawn on the corporation's checking account in the bank, signed by Lovell, in the amount of $20,083.33, payable to the order of the bank; and that the bank received the check, caused it to be paid out of corporate funds, and retained the proceeds thereof, applying $5,020.83 to the payment of the personal debt of Warden. It further alleges that the bank made no inquiry as to the authority of Warden or Lovell to use such funds for such purpose; that if inquiry had been made it would have learned that neither had such authority; that the bank was negligent in not making inquiry; that such transactions constituted a wrongful and unlawful diversion of funds of the corporation; and that demand was made and refused and no part thereof was paid.

The allegations of the second cause of action are substantially the same as the first, except it involves a note dated March 1, 1949, in the sum of $5,063.19, upon which payment was made May 31, 1949, and alleges that by the diversion and payment by means of a corporate check for $15,189.57 signed by Warden, $5,063.19 of said amount was applied in payment of Warden's personal debt to the bank. The corporation prays judgment on the two causes of action in the amount of $10,084.02, interest, and costs.

The amended answer of the bank to both causes of action pleaded in the amended petition denies generally any liability on its part to the corporation on the two transactions pleaded therein; alleges that the corporation succeeded the partnership of Jirdon and Warden; that Warden was the vice president and managing officer of the corporation and was authorized by resolution prepared and adopted by the directors of the corporation, delivered by it to the bank, and filed by the bank, to handle transactions in the name of the corporation; and that the two transactions here involved

were handled in accordance with the authority granted by the resolution.

The amended reply of the corporation to the amended answer of the bank is in fact a general denial that the resolution mentioned in the amended answer authorized Warden, the managing officer of the corporation, to handle the two transactions here involved as pleaded in the amended answer.

Jury was waived and trial had to the court. The trial court rendered judgment for the bank with respect to both causes of action. Motion for new trial filed by the corporation was overruled and the corporation appeals.

The record discloses that John R. Jirdon has lived at Morrill, Nebraska, since 1915, and at the time the transactions involved in this action took place he was the owner of nine separate corporations. Prior to 1935, Frank Warden was a feed salesman. Jirdon's grain and elevator company was one of his customers. In June 1936, Warden and Jirdon started into the feed business together under the name of John R. Jirdon Twin Cities Division. They acquired a feed mill and elevator at Gering. Jirdon put up the capital, and Warden was given the right to acquire an interest in the partnership from the earnings of the business. He acquired such an interest until the partnership was on an equal basis to each partner in 1945. Warden was the sole manager of the partnership business, and Jirdon was concerned with, and consulted on, the policy of the business. Prior to 1945, the business of the partnership was handled through the Live Stock National Bank of Omaha, of which Jirdon was a director. In the fall of 1945, the partnership started a checking account with the Scottsbluff National Bank. Warden had a personal account and established a line of credit with the bank. Jirdon continued to reside at Morrill and Warden lived at Gering. Warden was authorized to write checks for and on behalf of the partnership. The record discloses many

occasions, too numerous to set out, where Warden wrote checks on the partnership account, deposited the proceeds of the checks to his personal account, and paid personal obligations in the form of notes to the bank which he was owing at the particular time. There is no question but that Warden was trusted explicitly by Jirdon, and vested with the sole management of the partnership business so far as the partnership and the bank were concerned.

The corporation was formed and organized on January 2, 1947, with 800 shares of capital stock issued, par value of $100 per share. Two hundred and forty shares were issued to Warden, and two blocks of 80 shares each to his immediate family. Jirdon received the balance of the shares and made a division of some of them to his immediate family. Roy Hildebrandt received 10 shares. The officers of the corporation were John R. Jirdon, president, Frank Warden, vice president, and Roy Hildebrandt, secretary and treasurer. It appears that Hildebrandt was secretary and treasurer of numerous corporations of which Jirdon was the head officer, especially so where the books of such corporations were kept at Morrill.

The corporation carried on its business in the same manner as the partnership. Warden was the sole managing officer of the business and the only person, except for bookkeepers and clerks, who had business with the bank or any dealings with the bank with reference to corporation affairs.

When the corporation was formed it deposited with the bank $50,000 from outside sources, transferred $40,000 from the partnership account, and made arrangement with the bank for a line of credit. It appears that the corporation was a substantial one, beginning business with paid-up capital of $80,000, and surplus and undivided profits of $64,651.55, according to the financial statement given to the bank at the opening of its business on February 1, 1947. The corporation grew until the

financial statement of January 1950 showed a capital of $80,000, and surplus and undivided profits of $148,654.50. It thus appears that the corporation was at all times solvent.

On January 15, 1947, the corporation delivered to the bank its corporate resolution which was on a form of the Live Stock National Bank of Omaha. It also appears that the same form of resolution was furnished to the Gering National Bank and to the Casper National Bank of Casper, Wyoming. The material parts of this resolution are as follows: "Be It Further Resolved, that the Vice-President F. R. Warden, Director Louis W. La Salle, Bookkeeper Jareld H. Mills of this Corporation (are) (is) authorized to SIGN ANY AND ALL CHECKS, DRAFTS, AND ORDERS, including orders or directions in informal or letter form, against any funds at any time standing to the credit of this Corporation with the said Bank, and/or against any account of this Corporation with the said Bank, and that the said Bank hereby is authorized to honor any and all checks, drafts and orders so signed, including those drawn to the individual order of any such officer and/or other person signing the same, without further inquiry or regard to the authority of said officer(s) and/or other person(s) or the use of said checks, drafts and orders, or the proceeds thereof.

"Be it Further Resolved, that the PRESIDENT AND/OR VICE PRESIDENT, single or jointly of this Corporation (are) (is) authorized to borrow from time to time on behalf of this Corporation from the said Bank such sums of money for such time and upon such terms as may to them, or any of them, seem advisable, and to execute in the name of the Corporation notes, drafts, or agreements for the re-payment of any sums so borrowed, * * *."

The first paragraph above set forth of the resolution is involved in the instant case, while the second paragraph falls under the transaction involved in the case

of Scottsbluff Nat. Bank v. Blue J Feeds, Inc., *ante* p. 65, 54 N. W. 2d 392.

A signature card was filed with the bank authorizing Warden and two other employees of the corporation as above indicated to sign corporate checks.

The transactions involved in the instant case are but a small part of the financial dealings had by Warden involving the partnership and the bank over a period from the fall of 1945 until the corporation was formed on January 2, 1947, and then involving the corporation until Warden's death in June 1950. We have heretofore made reference to the partnership transactions had with the bank and Warden's authority in respect thereto. Several transactions had by the corporation with the bank appear in the record and the parties are in accord with reference to most of them. They have been examined and it would serve no useful purpose to set them out in this opinion. It is apparent from the record that by authorization of the other corporate officers Warden was granted and exercised practically unlimited authority in dealing with the bank in corporate affairs in the manner provided by that part of the resolution here involved.

The transactions involved in the instant case may be summarized as follows: The record shows that on October 13, 1948, the corporation borrowed $15,000 from the bank on a corporate note, the proceeds of which were deposited to the corporate account. On the same day Warden borrowed from the bank on his personal note the sum of $5,000, and paid the same with corporate check No. 3015 on November 12, 1948, the check being in the amount of $20,083.33, of which $15,062.50 was applied to the payment of the corporate note then owed by the corporation, and the balance was applied, at Warden's direction, to the payment of his $5,000 note with accrued interest of $20.83.

On December 2, 1948, Warden borrowed from the bank on his personal note the sum of $5,000, which he

renewed on March 1, 1949, and paid the same with corporate check No. 3424 on May 31, 1949. This check was in the amount of $15,189.57, of which $10,126.38 was applied to the payment of a corporate note then owed by the corporation and the balance was applied, at Warden's direction, to the payment of his $5,000 note with accrued interest of $63.19.

On November 12, 1948, Warden caused himself to be charged upon his personal drawing account at Gering with an expenditure of $5,000 by check No. 3015, and on June 1, 1949, with an expenditure of $5,063.19, by check No. 3424.

On January 2, 1950, at an annual meeting of the directors of the corporation, Warden informed Jirdon and Hildebrandt that he had been using corporate funds to pay personal indebtedness. From the records of the corporation he was indebted to it in the amount of $20,528.48. In fact, an examination of the corporate books would have indicated defalcations far in excess of this amount. A settlement was negotiated with Warden by the terms of which he delivered to the corporation a promissory note in the amount of $17,000, dated January 2, 1950, due in one year, with interest at 5 percent per annum, secured by 240 shares of capital stock of the corporation of a value at that time of approximately $48,000. The exact amount is not determinable because the defalcations were not known. He was to pay in cash to the corporation $3,528.48 within a reasonable time. At the same time Jirdon was negotiating the sale of the corporation. No objections were made to the withdrawals of corporate money by Warden. The other directors of the corporation knew he was using corporate funds to pay his personal indebtedness but felt the corporation was adequately secured by the settlement. Thereafter Warden handled the corporate funds in the same manner as previously, without objections on the part of Jirdon and Hildebrandt who did not question his authority to so handle the corporate funds, and only questioned the

same after his death in the latter part of June 1950.

Reports summarizing each day's business were prepared by Warden and submitted by him to Jirdon and Hildebrandt at Morrill. Monthly balance sheets were likewise prepared by him for each place of business of the corporation, and were made separately. These reports were examined to some extent. Hildebrandt consolidated the annual balance sheets from the Gering and Casper offices, and prepared income tax returns and supplied the bank with financial statements discerned by the balance sheets. This is apparently the only kind of examination made of the corporate books. There was no examination made by Jirdon and Hildebrandt of the full and complete records of transactions indicating the banking business of the corporation which were either called for by Warden or sent in the name of the corporation each calendar month. The statements requested an examination of such accounts.

There is nothing in the record to indicate Warden's salary as a corporate officer. He apparently had an unlimited drawing account. Nor does the record disclose the accounting method used by the corporation with reference to the division of corporate profits. It does show numerous and extensive withdrawals from separate funds both by cash and check for personal use, in addition to various credits to Warden, indicating payments by him to the corporation. Such payments at times were sufficient to create a credit balance in his favor.

The principal amount and interest of Warden's share of both of the checks involved in this case were charged to him on the corporation books at Gering simultaneously with the writing of the checks. These amounts show as a debt of Warden to the corporation on January 13, 1950. These two $5,000 items upon which this suit is based were a part of Warden's indebtedness to the corporation.

The corporation assigns as error that the findings of

fact by the trial court and the trial court's conclusions of law therefrom are contrary to the evidence, not sustained by sufficient evidence, and contrary to law.

In Employers' Liability Assurance Corp. v. Hudson River Trust Co., 250 App. Div. 159, 294 N. Y. S. 698, three types of cases with reference to constructive notice and inquiry to be made affecting checks, withdrawals, and deposits in banks were distinguished. The one involved in this case relates to the dealings of a bank with the officers or agents of private corporations. In this connection several cases are cited. In the case of an officer or agent of a private corporation dealing with its funds the authority of such officer or agent is not known to all but depends upon the authority conferred upon him by the corporation which he represents. In such class of cases a bank knowingly receiving corporate funds for deposit in the individual account of such officer or agent is held to be under the duty of making inquiry to ascertain the extent of his authority in the transaction.

In the instant case the bank complied with the rule set forth in the above-cited case. It ascertained Warden's authority to transact corporate affairs with it through the resolution prepared and adopted by the corporate officers and furnished to the bank, wherein the authority was set out. We deem this sufficient compliance. From an analysis of the resolution it is clear that the specific, express, and explicit intention of the corporate officers was to authorize the bank to honor all checks drawn by Warden, or to him, or upon which Warden directed the use or disposition of the proceeds without further inquiry or regard to the authority of said affairs. It specifically authorizes the bank "to honor any and all checks * * * so signed, * * * without further inquiry or regard to * * * the use of said checks, * * * or the proceeds thereof." We construe the resolution to mean that the bank was not at the time nor under the circumstances shown by the evidence under any duty to inquire or investigate further the authority of Warden

to direct the disposition of checks Nos. 3015 and 3424 heretofore set out. Such checks were drawn upon the account of the corporation, charged thereto, and reflected in the canceled checks and statements delivered to the corporation at the end of each calendar month.

From our research we are unable to find cases, wherein under a factual situation similar to the case at bar involving the extensive authority granted a corporate officer as appears in the language of the resolution here considered, that are in disagreement with the analysis we have placed upon the resolution.

It is apparent after the decision in Kuhns v. Live Stock Nat. Bank, 137 Neb. 459, 289 N. W. 893, that the Live Stock National Bank corrected the language of the resolution which this court held was not broad enough to protect the bank in the Kuhns case. Therefore, after the decision in such case the resolution was amended to make it broad enough to protect the bank in the event a similar situation would arise again. This is the amended resolution that we have in the instant case, which is on a Live Stock National Bank form, possibly obtained by Jirdon who was a director of the Live Stock National Bank, to be utilized for the purpose of the corporation in the instant case in its dealings with this bank or banks wherein it had deposits. We hold that part of the resolution pertinent to this case absolves the bank from any liability for the payment of the corporate checks involved herein, or the proceeds thereof, under the express, specific authority granted to the bank as evidenced by the resolution.

In view of our conclusion, we deem it unnecessary to set forth or analyze other assignments of error.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.